## SETTLEMENT AND RELEASE AGREEMENT

**I.    PARTIES**

This Settlement and Release Agreement (hereinafter "Agreement") is entered into effective as of the 1st day of July, 2005, by and among the following Parties:

A.    Elisabeth Cole, M.D., (hereinafter "Elisabeth Cole") individually, as beneficiary of the Estate of Madeline Cole (hereinafter "Estate"), as beneficiary of the Testamentary Charitable Remainder Annuity Trust established under the will of Madeline Cole (hereinafter "Charitable Remainder Trust"), as owner, trustee or beneficiary of Food for Thought or Glendalough Trust, and in any other capacity relevant to the Estate, the Charitable Remainder Trust and this Agreement.

B.    The Alaska Trust Company (hereinafter "ATC"), the personal representative of the Estate and the trustee of the Charitable Remainder Trust.

C.    World Wildlife Fund (hereinafter "WWF"), a residual beneficiary of the Charitable Remainder Trust.

D.    St. Jude Children's Research Hospital (hereinafter "St. Jude"), a residual beneficiary of the Charitable Remainder Trust.

**II.    PROCEEDINGS**

A.    ATC is acting as personal representative of the Estate and was appointed by the court in the *Matter of the Estate of Madeline Cole*, Case No. 3AN-99-241 PR, Superior Court for the State of Alaska, Third Judicial District at Anchorage (hereinafter "Probate Proceedings").

B.    ATC is a plaintiff in litigation entitled *Alaska Trust Company, Personal Representative of the Estate of Madeline Cole, Deceased v. Elisabeth Cole, et al.*, Case No. 3AN-00-10014 CI, consolidated with *Alaska Trust Company, the Personal Representative of the Estate of Madeline Cole, Deceased, v. Alaska USA Federal Credit Union,* Case No. 3AN-00-10809 CI, Superior Court for the State of Alaska, Third Judicial District at Anchorage (hereinafter "Alaska Litigation").



COPY

C.      ATC is the petitioner in *In the Matter of the Petition of Alaska Trust Company*, Serial No. CP 2001-56, High Court of Justice of the Isle of Man (hereinafter "Isle of Man Proceedings")

D.      ATC is plaintiff in a lawsuit filed against Elisabeth Cole in the District Court of Brazoria County, Texas under Cause No. 14550 BH01 (hereinafter "Texas Litigation") which involves the interest of the Estate in certain real property being a 599.9143 acre tract located in Brazoria County, Texas and more particularly described in pleadings filed in the Texas Litigation ("Texas Ranch Property").

III.    RECITALS

A.      Madeline Cole died on December 23, 1998 leaving her Last Will and Testament dated July 31, 1998 (hereinafter the "Will"). The Will was admitted to probate and ATC was appointed as successor personal representative in the Probate Proceedings under the Order for Formal Probate of Will and Formal Appointment of Personal Representative dated November 1, 1999. ATC currently serves as personal representative of the Estate.

B.      ATC was appointed successor trustee of the Charitable Remainder Trust in the Probate Proceedings under Order Appointing Successor Trustee dated December 7, 1999. ATC continues to serve as Trustee of the Charitable Remainder Trust.

C.      Elisabeth Cole has asserted a claim against the Estate in the amount of $1,750,000 for monies owed her by her mother which were not paid prior to death as well as a claim against the Estate in the amount of approximately $506,000 for funds due from a testamentary trust which the decedent should have established on the death of Alexander Cole under the New York probate of the Estate of Alexander Cole of which Elisabeth Cole would have been the residual beneficiary (hereinafter "Elisabeth Cole Claim"). ATC acting as Personal Representative of the Estate denied the Elisabeth Cole Claim by Notice of Disallowance of Claim dated February 3, 2000. Elisabeth Cole has petitioned the court to allow the Elisabeth Cole Claim by Petition for Allowance of Claim dated March 15, 2000. ATC opposed the Petition for Allowance of Claim on the basis that the claim was untimely as set forth in its Response of Personal Representative to Petition for Allowance of Claim dated March 31, 2000. It is the

12/7/05

position of Elisabeth Cole that the statutory non–claim period set forth in AS 13.16.460 is inapplicable in that she was a known or reasonably ascertainable creditor who should have received actual notice as provided in *Tulsa Professional Collections Services v. Pope*, 485 U.S. 478 (1998). The Elisabeth Cole Claim is also the subject of a lis pen notice filed on December 7, 1999 under Clerk's File No. 99-054627, Brazoria County, Texas.

     D.     Jacqueline Mennucci (hereinafter "Mennucci Claim") has filed a claim against the estate in the amount of $110,000 which claim was received by the former personal representative on June 21, 1999. By Notice of Disallowance of Claim dated August 26, 1999, the former personal representative denied that claim. Jacqueline Mennucci petitioned for allowance of her claim and the former personal representative petitioned the court to determine whether the claim should be paid. Personal Representative's Petition Regarding Allowance of Claim Pursuant to AS 13.16.475(b) dated October 29, 1999. That petition remains outstanding and unresolved.

     E.     In 2004 ATC partially funded the Charitable Remainder Trust by transfer of assets from the Estate to the Charitable Remainder Trust. The Charitable Remainder Trust has not been fully funded. Under the terms of the Charitable Remainder Trust, Cole was entitled to an annuity payment made on a quarterly basis. The Trustee is not required to make annuity distributions to Elisabeth Cole until such time as the Charitable Remainder Trust has been fully funded. No distributions from the Charitable Remainder Trust have been made to Elisabeth Cole with the exception of a $50,000 distribution made on or about May 3, 1999 by the prior Trustee.

     F.     Under Article V of the Will, Elisabeth Cole is entitled to all of the decedent's tangible personal property and household effects such as furniture, furnishings, pictures, books, jewelry, wearing apparel and the like. Elisabeth Cole has received all such items and such specific bequest has been fully satisfied. The Parties acknowledge that some such property may have been lost or stolen from the New York apartment prior to the death of Madeline Cole.

     G.     The annuity amount due Elisabeth Cole from the Charitable Remainder Trust starting from the date of the decedent's death to the current date is determined by the provisions of the Charitable Remainder Trust and the appropriate statute and

*CJC*
12/7/05

regulations. The calculation of the annuity amount remains a matter of dispute between Elisabeth Cole and ATC and has not been finally determined by the court.

## IV.   SETTLEMENT TERMS

A.     Elisabeth Cole shall bring forward her petition for allowance of the Elisabeth Cole Claim. Any recovery under the Elisabeth Cole Claim shall be paid to ATC in its capacity as Trustee of the Trust for Liquidation of Assets ("Liquidating Trust") for distribution under the terms of this Agreement and the Liquidating Trust.   The Liquidating Trust is attached hereto as Exhibit A and ATC shall petition the Court for approval of the Liquidating Trust to be established in substantially the form of the instrument attached hereto as Exhibit A.

B.     Elisabeth Cole shall petition the Court to approve payment of reasonable attorneys' fees incurred by her with regard to the administration of the Estate and the administration and implementation of the Charitable Remainder Trust on the basis that such fees were incurred by her in an effort to facilitate proper administration of the Estate and Charitable Remainder Trust and in fact resulted in more appropriate administration of the Estate and of the Charitable Remainder Trust and hence benefited the Estate and Charitable Remainder Trust and should be paid as an expense of the Estate or Charitable Remainder Trust to the extent administration was benefited.

C.     Elisabeth Cole shall withdraw all other claims or other actions with regard to or against the Estate or the Charitable Remainder Trust including but not limited to any will contests, claims, lis pendens, or any other matters that would remain claims against or with regard to the Estate, the Charitable Remainder Trust or the administration of either.   Elisabeth Cole shall withdraw and dismiss her appeal of judgments against her in favor of ATC in the Alaska Litigation and shall withdraw her Civil Rule 60(b) motion in the Alaska Litigation to set aside judgments against her in favor of ATC and shall further withdraw all other pending motions or requests in the Alaska Litigation. Nothing in this Agreement shall require Elisabeth Cole to withdraw her Civil Rule 60(b) motion with regard to judgments against her in favor of Kenneth McPherson.  This withdrawal of claims or other actions is not intended to preclude Elisabeth Cole from bringing claims or actions against the law firm of Davis and Davis, Trigg Davis, Deborah Randall and physicians or health care professionals engaged

*EHC*
*12/7/05*

through Davis and Davis regarding these matters, Paul W. Koval, and the National Bank of Alaska (now Wells Fargo). In the event Elisabeth Cole secures any recover against the above named either by judgment or settlement she shall obtain a release in favor of WWF, St. Jude, and ATC of potential indemnity or similar actions or claims from the appropriate persons or entities or in the alternative shall escrow sufficient funds to adequately protect WWF, St. Jude, and ATC or consent (and does hereby consent) to the imposition of a lien against any recoveries and Elisabeth Cole shall provide notice of any such obligations to the person or entities making payments to her or for her benefit.

D.     WWF, St. Jude and ATC shall notify the Federal District Court for the State of Alaska that losses to WWF, St. Jude and ATC have been adequately provided for under the terms of this Agreement and any obligations to be paid in the Federal criminal action against Elisabeth Cole have been satisfied and the restitution obligation should be cancelled to avoid multiple restitution to WWF, St. Jude and ATC. This notification shall be in the form of letters from counsel for WWF, St. Jude and ATC and such correspondence shall be addressed to counsel for Elisabeth Cole and shall authorize counsel for Elisabeth Cole to submit such correspondence to the Federal District Court for the District of Alaska.

E.     Elisabeth Cole shall make her best efforts to obtain a withdrawal and release of the Mennucci Claim and the petition for allowance.

F.     The judgment against Elisabeth Cole in favor of ATC in the Alaska Litigation which has been assigned from the Estate to the Charitable Remainder Trust shall be assigned by the Charitable Remainder Trust to ATC as Trustee of the Liquidating Trust and ATC as Trustee of the Liquidating Trust shall continue to hold the judgment until such time as WWF and St. Jude have received distributions under the terms of this Agreement of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000) each, at which time it shall be assigned to Elisabeth Cole. The judgment shall continue as a lien against the property of Elisabeth Cole until assigned to her except that as to assets transferred or released to Elisabeth Cole from the Estate, Charitable Remainder Trust or Liquidating Trust under the terms of this Agreement and ATC shall release the lien and shall not enforce it against such assets. ATC, in its capacity as Trustee of the Liquidating Trust, does hereby covenant not to execute on

*EAC*
*12/7/05*

the judgment for a period of three (3) years from the date that the judgment is assigned to the Liquidating Trust except for the purposes of enforcing the transfer of assets under this Agreement. ATC shall file a partial satisfaction of judgment in the Alaska Litigation reflecting that the total unsatisfied portion of the judgment is $3,500,000 and upon WWF and St. Jude having received distributions under this Agreement ATC shall file partial satisfactions of judgment reflecting such payments. For example, if WWF and St. Jude receive combined distributions of $1,900,000 the outstanding amount of the judgment shall be reduced to $1,600,000 by partial satisfaction of judgment. Once WWF and St. Jude have received One Million Seven Hundred Fifty Thousand Dollars ($1,750,000) each from the Liquidating Trust then the judgment shall be released and forever discharged and ATC shall file appropriate documents.

G.    ATC and Elisabeth Cole shall stipulate to the dismissal of the Isle of Man Proceedings and shall agree and stipulate for the release of all funds in the name of Elisabeth Cole held by Barclays Bank in the Isle of Man specifically including, but not limited to, the account in the amount of approximately $70,000 which funds shall be paid to ATC in its capacity as personal representative of the Estate. Such funds shall be transferred for distribution under the terms of this Agreement.

H.    Elisabeth Cole shall surrender, disclaim and renounce her interest in annuity payments from the Charitable Remainder Trust from July 1, 2005 forward. ATC shall petition the Court for determination of the annuity payments due Elisabeth Cole from the date of decedent's death until June 30, 2005 and upon determination of those amounts shall pay that amount to the Liquidating Trust for distribution in accordance with the terms of this Agreement and the Liquidating Trust. In addition, the remainder amount and all remaining assets of the Charitable Remainder Trust not allocated to annuity payments due Elisabeth Cole shall also be distributed to the Liquidating Trust for distribution in accordance with the terms of this Agreement and the Liquidating Trust.

I.    ATC in its capacity as Personal Representative of the Estate shall liquidate marketable securities, including but not limited to the following assets held by the Estate prior to distribution to the Charitable Remainder Trust:

(i)    New York State Dorm Auth Rev 8.00% Due 07/01/07

(ii)   Ny St Dorm Auth Cty Univ Cmn Ty 7.00% Due 7/01/09

BAC
12/7/05

    (iii)    Ny St Dorm Auth Revs 6.95% Due 05/01/07

    (iv)    New York St Hsg Fin Agy St 6.50% Due 11/01/06

    (v)    New York St Hfa Rfdg St Unv 8.00% Due 05/01/11

    (vi)    Puerto Rico Comwlth Acquedt 9.00% Due 07/01/09; And

    (vii)    Suffolk Cnty Ny Wtr Auth Wtw 6.75% Due 6/01/12,

J.    The results of Elisabeth Cole's petition for allowance of the Elisabeth Cole Claim and Elisabeth Cole's petition to approve payment of reasonable attorneys' fees incurred by her with regard to the administration of the Estate and the administration and implementation of the Charitable Remainder Trust shall not affect in any way the terms or enforceability of this Agreement and the results of those petitions simply to act to modify distributions made from the Liquidating Trust. Provided, however, anything in this Agreement to the contrary not withstanding, if the court does not allow at least seventy five percent (75%) in the aggregate of the combined amounts claimed under Elisabeth Cole's petition on the Elisabeth Cole Claim and Elisabeth Cole's petition to approve payment of reasonable attorneys' fees incurred by her with regard to the administration of the Estate and the administration and implementation of the Charitable Remainder Trust then Elisabeth Cole has the option to rescind this Agreement and make the Agreement to be of no force and effect except for the provisions of Article IV (Settlement Terms), Paragraph O of this Agreement which shall survive rescission. Nothing herein shall provide a right on the part of WWF, St. Jude or ATC to rescind under such conditions, the right to rescind under these conditions belonging only to Elisabeth Cole. No Party shall have a right to rescind on any other conditions.

K.    Elisabeth Cole shall release all lis pendens or similar filings made with regard to the Texas Ranch Property or the Texas Litigation and shall cooperate with the sale of the Texas Ranch Property by the Trustee of the Liquidating Trust or ATC acting in any other capacity and shall execute such other documents and releases as may be necessary to implement this action.

L.    ATC shall petition the court in the probate proceedings to close the Estate under formal procedures and distribute the residue of Estate assets to the Charitable Remainder Trust subject to resolution of the Elisabeth Cole Claim, the Mennucci Claim and other outstanding matters as required for proper administration of the Estate or by

12/7/05

the terms of this Agreement. It is the intent that the Estate be fully and completely closed as promptly as possible and to that end ATC in its capacity as personal Representative of the Estate is authorized to enter into an agreement with ATC in its capacity as Trustee of the Liquidating Trust for payment of any reasonable and necessary charges and expenses incurred with regard to closing the Estate including but not limited to costs of preparation and filing of the final fiduciary income tax return of the Estate.

M.    ATC shall petition the Court in the Probate Proceedings to determine that the Charitable Remainder Trust is terminated based on the fact that Elisabeth Cole has disclaimed and renounced her interest in annuity payments from the Charitable Remainder Trust from June 30, 2005 forward, leaving the Charitable Remainder Beneficiaries as the sole beneficiaries of the Trust. The petition shall request a court order directing transfer of all Charitable Remainder Trust assets to the Liquidating Trust. It is the intent that the Charitable Remainder Trust be fully and completely closed as promptly as possible and to that end ATC in its capacity as Trustee of the Charitable Remainder Trust is authorized to enter into an agreement with ATC in its capacity as Trustee of the Liquidating Trust for payment of any reasonable and necessary charges and expenses incurred with regard to closing the Charitable Remainder Trust including but not limited to costs of preparation and filing of the final fiduciary income tax return of the Charitable Remainder Trust. Assets transferred to the Liquidating Trust from the Charitable Remainder Trust shall be held for distribution in accordance with the terms of this Agreement and the Liquidating Trust.

N.    The judgments against Elisabeth Cole which have been acquired by ATC and currently held by the Estate know as the Kastani Judgment and the R.W. Leasing Judgment shall be held by the Liquidating Trust and assigned to Elisabeth Cole only after St. Jude and WWF have received distributions of One Million Seven Hundred Thousand Dollars ($1,750,000) each from the Liquidating Trust. The R.W. Leasing Judgment and the Kastani Judgment shall continue as liens against the property of Elisabeth Cole until they are assigned to her except that as to assets to be transferred or released to Elisabeth Cole from the Liquidating Trust, ATC shall release the lien and not enforce it against such assets. Further ATC shall not execute on of otherwise

enforce the judgments except to the extent necessary to secure title or control of assets listed in the 6/30/2005 Account Holdings Statements of ATC with regard to the Estate and the Charitable Remainder Trust.

O.    The Estate shall pay attorney for St. Jude and WWF the combined sum of Twenty-five Thousand Dollars ($25,000) for the costs and expenses incurred by St. Jude and WWF in drafting this Agreement and assisting regarding the Estate and the Charitable Remainder Trust and related matters. This amount shall be paid by the Estate as an expense of Estate administration upon signature of all parties to this Agreement.

P.    Elisabeth Cole assumes all liability and responsibility for any judgments against her in favor of persons or entities who are not parties to this Agreement, including but not limited to, Kenneth McPherson, and any amounts paid against such judgments by the Estate, the Charitable Remainder Trust or the Liquidating Trust shall be a debit against the share and any payments passing to Elisabeth Cole such that such payments shall reduce the distributions to Elisabeth Cole and shall not reduce the distributions to St. Jude or WWF. Nothing in this provision gives ATC the authority to settle or voluntarily pay any sums toward the satisfaction of such judgments. ATC shall fully cooperate with Elisabeth Cole and shall direct its attorneys to fully cooperate with Elisabeth Cole regarding her efforts to set aside or minimize any such judgments. To the extent that ATC incurs any liability or expense in such cooperation such charges shall be borne solely and exclusively by Elisabeth Cole from an additional reserve established by ATC from assets otherwise passing to Elisabeth Cole.

Q.    Elisabeth Cole shall transfer any remaining interest she may have in the Texas Ranch property, any Texas grazing lease, the one-quarter (¼) interest in a 3.87 acre lease in Poughkeepsie, New York (Holiday Inn Lease) and such other property as may be reflected on the books and records of ATC as an asset of the Charitable Remainder Trust, Estate or Liquidating Trust and she shall sign such additional and further documents as may be required by ATC to implement this transfer. Elisabeth Cole shall release any *lis pendens* filed on her behalf or on behalf of Food For Thought or Glendalough Trust or any other entity, trust or organization in which Elisabeth Cole has an interest and shall consent to and facilitate sale of the Texas Ranch property and

DAC
12/7/05

collection of grazing lease fees by ATC.   Any liens or obligations attributable to Elisabeth Cole including but not limited to the Tokai Judgment and tax obligations of Elisabeth Cole which act as liens against the Texas Ranch Property shall be paid by Elisabeth Cole or debited from her distributions from the Liquidating Trust and in the event that ATC makes its initial distribution from the Liquidating Trust prior to sale of the Texas Ranch Property then ATC shall reserve from the initial distribution passing to Elisabeth Cole an amount sufficient to satisfy the above-referenced charges to be paid or debited by Elisabeth Cole.   Provided, however, anything in the forgoing to the contrary not withstanding, ATC shall release the liens of the R.W. Leasing and Kastani Judgments as they apply to the Texas Ranch property without debit to Elisabeth Cole.

R.    To the extent that the Elisabeth Cole Claims and the annuity payments due Elisabeth Cole can not be satisfied from Currently Liquid Assets, they shall attach to other assets and all such Currently Liquid Assets and other assets shall be contributed to the Liquidating Trust under the terms of this Agreement.

## V.    CONFIDENTIALITY; NO PUBLICITY; AND NON-DISPARAGEMENT

A.    The Parties expressly agree that maintaining the confidentiality and non-publicity of this Agreement is essential and material to entering into this Agreement.  In this regard, the Parties and their attorneys and representatives agree not to disclose, divulge, publish, broadcast, state, or otherwise indicate to anyone other than their attorneys, accountants, tax preparers, financial advisors, or a court of competent jurisdiction, the terms of this Agreement and/or any related court proceedings (domestic and international), including but not limited to the proceedings listed in this Agreement.

B.    The Parties may respond to any inquiries regarding the resolution of any of the aforementioned or related matters by stating only that such claims were amicably resolved to the Parties' mutual satisfaction, or words of similar effect.

C.    Notwithstanding the foregoing, nothing herein shall prohibit or restrict the Parties from informing their attorneys, accountants, tax preparers, financial advisors or, if required by law, any governmental or regulatory authority, the amount paid in settlement, provided that each Party advises her or its attorneys, accountants, tax preparers, financial advisors of the confidentiality and non-publicity provision hereof and obtains written assurances from her or its attorneys, accountants, tax preparers,

*12/7/05*

financial advisors that they shall comply with this confidentiality and non-publicity provision.

D.     Notwithstanding the forgoing, nothing shall prohibit any Party from complying with a valid subpoena or court order from a court of competent jurisdiction requiring the production of this Agreement or disclosure of its terms.  Upon receiving such a subpoena or court order, the receiving Party shall immediately provide notice to the other Parties to this Agreement or their attorneys.  Notice shall include identification of the subpoena or court order and the time period for production or disclosure.  The Party receiving the subpoena or court order shall object to the request, citing the confidentiality provision of this Agreement and providing the other Parties an opportunity to obtain an order barring such production or disclosure.  Other than objecting to production or disclosure on the grounds of confidentiality, no Party shall bear any obligation to seek an order barring production of the Agreement or disclosure of its terms.

E.     Notwithstanding the foregoing, nothing herein shall prohibit or restrict any of the Parties from filing a copy of this Agreement with a court of competent jurisdiction for the purposes of enforcing or interpreting the provisions of this Agreement, provided, however, that any Party making such filing shall also request that the court accept this Agreement under seal and otherwise maintain the confidentiality of this Agreement.

F.     From the date of this Agreement St. Jude and/or WWF shall not make any public disparaging statements concerning Elisabeth Cole.   This non-disparagement agreement shall not in any way prevent the St. Jude and/or WWF from disclosing any information to their attorneys or in response to a lawful subpoena or court order requiring disclosures of information.   This non-disparagement agreement shall not restrict St. Jude and/or WWF from statements to officers, directors, or board members. From the date of this Agreement Elisabeth Cole shall not make any public disparaging statements concerning St. Jude and/or WWF, or any of the aforementioned entities' officers, directors, employees, attorneys, agents, or contracting parties, or businesses or operations.   This non-disparagement agreement shall not in any way prevent Elisabeth Cole from disclosing any information to her attorneys or in response to a lawful subpoena or court order requiring disclosures of information.

SETTLEMENT & RELEASE AGREEMENT (final)
10042\01 -- Page 11

*EHC*
12/7/05

G.    Elisabeth Cole may seek damages and equitable relief for any violation of the provisions of this Article V. Equitable remedies may include, but are not limited to, an injunction to prevent further breaches or an order compelling specific performance of this Agreement. The remedies of Elisabeth Cole for breach of the confidentiality, no publicity, and non-disparagement terms of this Agreement shall be cumulative and the pursuit of one remedy shall not be deemed to exclude any other remedy. St. Jude and/or WWF may seek damages and equitable relief for any violation of the provisions of this Article V. Elisabeth Cole acknowledges and agrees that if she breaches the confidentiality, no publicity, and non-disparagement terms of this Agreement, monetary damages may be extremely difficult or impractical to calculate or ascertain with absolute certainty. Accordingly, in the event that Elisabeth Cole breaches the confidentiality, no publicity, or non-disparagement terms, she shall be liable to St. Jude and/or WWF for liquidated damages in a separate amount of Two Hundred Fifty Thousand Dollars ($250,000) and forfeiture of remaining trust distributions. These liquidated damages are in addition to, and not a part of, the other damages allowed by law, including but not limited to equitable remedies. Equitable remedies may include, but are not limited to, an injunction to prevent further breaches or an order compelling specific performance of this Agreement. The remedies of St. Jude and WWF for breach of the confidentiality, no publicity, and non-disparagement terms of this Agreement shall be cumulative and the pursuit of one remedy shall not be deemed to exclude any other remedy.

H.    The Parties agree that this Agreement and the Liquidating Trust shall be submitted to the Court in the Probate Proceedings for approval and to facilitate the implementation of this Agreement. The submittal of this Agreement and the Liquidating Trust shall be made under seal and concurrently with a petition requesting that the Court direct such documents shall be maintained as confidential and shall not be available for review or inspection by third parties and that any proceedings reviewing the terms of this Agreement and the Liquidating Trust shall be closed proceedings. This Agreement and the Liquidating Trust shall remain in full force and effect regardless of whether the Court grants the request to maintain the confidentiality of this Agreement and the Liquidating Trust.

VI.    **RELEASE**

SETTLEMENT & RELEASE AGREEMENT (final)
10042\01 – Page 12

*ENC*
*12/7/05*

In consideration of the mutual promises set forth in this Agreement, except as specifically provided in this Agreement the Parties hereby release and fully discharge each other (and their officers, directors, attorneys, investigators, accountants and legal staff), and all other persons, firms and corporations, liable or who might be claimed to be liable who are or have been engaged or employed by or related to ATC, St. Jude and/or WWF (specifically excluding the law firm of Davis and Davis, Trigg Davis, Deborah Randall and physicians or health care professionals engaged through Davis and Davis, regarding these matters, Paul W. Koval, and the National Bank of Alaska (now Wells Fargo)), individually and collectively, of and from every claim, demand, liability, action, and cause of action whatsoever of any kind and nature, whether formally asserted or which could have been asserted in any of the proceedings listed above or otherwise, whether arising out of contract, tort, statute, or otherwise, in law or in equity, including all claims for indemnity compensatory, special, liquidated and punitive damages, penalties, costs, expenses, and attorneys' fees, and other types of loss or losses, whether presently known or unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, arising or alleged to have arisen out of, or in any way, relating to, any of the proceedings listed above or otherwise.

Except with regard to transfers from the Estate to the Charitable Remainder Trust, each party hereto warrants to the other that it has not assigned or transferred any claim or part or portion of any claim released herein. Each party hereto further warrants to the other that if such assignment or transfer has occurred, the breaching party shall indemnify and hold the non-breaching party harmless from and against any claims based on or arising out of any such assignment or transfer purported or claimed. This obligation to indemnify and hold harmless shall include the obligation to pay reasonable attorneys' fees and costs actually incurred, whether or not litigation has been commenced.

The intention of the parties hereto being to fully, completely and forever settle, compromise, release and discharge all claims that have been asserted or could have been asserted between and among them and each of the respective parties hereto, each party hereto warrants that it shall not by itself or in concert with others, maintain or cause to be maintained any demands, actions, lawsuits, arbitrations, or any other

proceedings against any other party hereto in any capacity whatsoever as a result of or pertaining to the claims released and discharged herein.

Each party hereto acknowledges that neither any other party hereto nor any agent or attorney of any other party hereto has made any promises, representations or warranties whatsoever, express or implied, not contained herein, concerning the subject matter hereof, to induce that party to execute this Release, and each party hereto acknowledges that it has not executed this Agreement in reliance upon any such promises, representations, or warranties not contained herein.   Each party hereto further acknowledges that it has had a full and complete opportunity to independently investigate all facts material hereto, and has done so.

It is understood that the nature and extent of any potential damages and injuries which may have been sustained by any party hereto may substantially change or worsen and that new damages may be discovered in the future.  It is understood that it is each party's intent to unequivocally release and forever discharge the other parties hereto from any and all claims accrued, accruing, or which may accrue in the future as a result of, in connection with, or related to any charges in the nature or extent of said damages or injuries or as a result of the discovery or new damages or injuries.  With respect to the foregoing, each party hereto acknowledges its familiarity with the decision in the case of *Witt v. Watkins*, 579 P.2d 1065 (Alaska 1978), and it still each party's intent to release the other party hereto from any and all such claims.

Each party hereto acknowledges its familiarity with the decisions in the cases of *Young v. State*, 455 P.2d 889 (Alaska 1969) and *Totem Marine T. & B. v. Alyeska Pipeline*, 584 P.2d 15 (Alaska 1978), and any protections of the holdings therein relevant to the present case are hereby waived.  Each party hereto specifically represents that it understands that it is not required or compelled to agree to the terms of this Agreement, and acknowledges the availability of other reasonable alternatives and adequate remedies, but has nonetheless freely, voluntarily and intelligently chosen not to pursue the same for the purposes of making a full, final and complete compromise of the claims released herein.

VII.    MISCELLANEOUS

*EdC*
12/7/05

A.    Correctness of Recitals.    The recitals set forth hereinabove are incorporated herein by reference and made a part of this Agreement.

B.    Attorney Fees.    Except as specifically provided in this Agreement, each party shall be responsible for the payment of his own court costs, attorney fees, litigation expense and other sums which have been expected in conjunction with the matters referenced herein.

C.    Counterparts.    This Agreement may be executed in counterparts, all of which, when taken together, shall constitute a fully executed original.

D.    Entire Agreement.    This Agreement constitutes the final and exclusive agreement between the Parties hereto pertaining to the subject matter hereof and all prior and contemporaneous agreements, representations, negotiations and understands of the Parties hereto, oral or written, are hereby superseded and merged herein.

E.    Further Documents.    Each party agrees to perform such further acts and to execute and deliver any and all further documents that may be reasonably necessary or desirable to effectuate the purpose of this Agreement.

F.    Modification.    No modification, waiver, amendment, discharge or change of this Agreement shall be valid unless the same is in writing and signed by the Parties.

G.    Severability.    If any provision or other portion of this Agreement shall become illegal, null, or void or against public policy, for any reason, or shall be held by any court of competent jurisdiction to be illegal, null or void or against public policy, the remaining portion of this Agreement shall not be affected thereby and shall remain in force and effect to the fullest extend permissible by law.

H.    Successors and Assigns.    Each and all covenants and conditions of this Agreement shall inure to the benefit of, and shall be binding upon, the successors in interest, assigns, and legal representatives of the Parties hereto.

I.    Governing Law.    The Parties hereby agree that this Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Alaska. In mutual recognition of the fact that this Agreement relates to an Estate in Anchorage, Alaska the Parties agree that in the event that any civil action is commenced regarding this Agreement, the State of Alaska, Third Judicial District at Anchorage is the proper for the commencement and trial of such action.

J.    Advice of Counsel. The Parties, and each of them, represent and declare that in executing this Agreement they have relied solely upon their own judgment, belief and knowledge, and the advice and recommendation of their own independently selected counsel engaged by them, if any, concerning the nature, extent, and duration of their rights and claims and that they have not been influenced to any extent whatsoever in executing the same by any representations or statements covering any matter made by the other Parties hereto or any other person. Accordingly, the rule of construction that a document is construed most strictly against the drafter of the document shall not apply in any construction or interpretation of this Agreement. In the event any income tax or other tax burden is imposed which is generated by distributions from the Charitable Remainder Trust and the Estate whether made to Elisabeth Cole directly or through the Liquidating Trust It is recognized and agreed by the Parties hereto that Elisabeth Cole shall be responsible for the tax burden and Elisabeth Cole acknowledges that she has obtained independent legal and tax advice regarding all matters including tax matters specifically noted herein.

K.    Headings. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

L.    Power of Attorney. Elisabeth Cole may execute an Alaska Statutory Form durable and presently effective Power of Attorney or additional powers of attorney in favor of one or more of her attorneys in order to facilitate execution of such other documents as may be necessary to implement this Agreement and ATC shall honor any such validly executed and currently effective Power of Attorney.

M.    Name. ATC acknowledges that Elisabeth Cole is an intensely private person and agrees that it shall use her name only to the extent required to maintain consistency.

*E+C*
*12/7/05*

DATED: _12/7/05_____, 2005                    _Elisabeth Cole_____
                                              Elisabeth Cole

STATE OF CALIFORNIA        )
                           } ss:
COUNTY OF _Alameda_        )

The foregoing instrument was acknowledged before me this _12_ day of
_July_____, 2005, by Elisabeth Cole.

> JODY SAMUELS
> COMM. #1342621
> NOTARY PUBLIC - CALIFORNIA
> ALAMEDA COUNTY
> My Comm. Expires Mar. 5, 2006

_____
Notary Public, State of California
My Comm. Exp. 3/5/06


                                              World Wildlife Fund

DATED: _August 16_____, 2005      By _David Flickinger_____
                                     Deputy General Counsel
                                     World Wildlife Fund, Inc.

STATE OF _District of Columbia_    )
                                   } ss:
COUNTY OF _____          )


The foregoing instrument was acknowledged before me this _16th_ day of
_August_, 2005, by _David Flickinger_ of World Wildlife Fund, a _non profit_
corporation, on behalf of the Corporation.

                    _Joan Parmenter_____
                    Notary Public, State of _District of Columbia_
                    My Comm. Exp. _____
                         Joan Parmenter
                         Notary Public, District of Columbia
                         My Commission Expires 4-14-2008

St Jude Children's Research
Hospital

DATED: _____8/4_____, 2005      By _____

STATE OF _Tennessee_    )                     John P Moses
                        ) ss:                 Chief Executive Officer
COUNTY OF _Shelby_      )

The foregoing instrument was acknowledged before me this _4th_ day of
_August_, 2005, by _John P Moses_ of St Jude Children's
Research Hospital, a _____ corporation, on behalf of the Corporation.

_____
Notary Public, State of _Tennessee_
My Comm. Exp. _7/11/06_

Alaska Trust Company as Personal
Representative of the Estate of
Madeline Cole

DATED: _____, 2005      By _____

                                              Douglas Blattmachr
                                              President

STATE OF ALASKA        )
                       ) ss:
THIRD JUDICIAL DISTRICT )

The foregoing instrument was acknowledged before me this _____ day of
_____, 2005, by Douglas Blattmachr of Alaska Trust Company, an
Alaska corporation, on behalf of the Company.

_____
Notary Public, State of Alaska
My Comm. Exp. _____

St Jude Children's Research
Hospital

DATED: _____, 2005    By _____

STATE OF _____    )
                             ) ss:
COUNTY OF _____      )

The foregoing instrument was acknowledged before me this _____ day of _____, 2005, by _____ of St Jude Children's Research Hospital, a _____ corporation, on behalf of the Corporation.

Notary Public, State of _____
My Comm. Exp. _____

Alaska Trust Company as Personal Representative of the Estate of Madeline Cole

DATED: _9/23_____, 2005    By _____
                                          Douglas Blattmachr
                                          President

STATE OF ALASKA             )
                            ) ss:
THIRD JUDICIAL DISTRICT     )

The foregoing instrument was acknowledged before me this 23rd day of _Xectember_____, 2005, by Douglas Blattmachr of Alaska Trust Company, an Alaska corporation, on behalf of the Company.

_____
Notary Public, State of Alaska
My Comm. Exp. _w/ position_

Approved, Reviewed and Authorized:

DATED: _____ 7/12 _____, 2005 _____
Darryl L. Jones, Attorney for
Elisabeth Cole

DATED: _____, 2005 _____
Robert L. Manley, Attorney for
World Wildlife Fund and St. Jude
Children's Hospital

DATED: _____ 9-23- _____, 2005 _____
Diane Vallentine, Attorney for
Alaska Trust Company

## TRUST FOR LIQUIDATION OF ASSETS

This Trust Agreement (the "Trust Agreement") is entered into as the _____ day of _____, 2005, by and among the Alaska Trust Company in its capacity as Trustee of the Testamentary Charitable Remainder Annuity Trust established under the will of Madeline Cole and in its capacity as Personal Representative of the Estate of Madeline Cole ("Transferor") and the Alaska Trust Company as Trustee of the Cole Trust for Liquidation of Assets (the "Liquidating Trustee") as authorized by the Order of the Court in the *Matter of the Estate of Madeline Cole*, Case No. 3AN-99-241 PR, Superior Court for the State of Alaska, Third Judicial District at Anchorage ("Probate Proceedings").

### RECITALS

A.    The Alaska Trust Company in its capacity as Personal Representative of the Estate of Madeline Cole and in its capacity as Trustee of the Elisabeth Cole Charitable Remainder Annuity Trust, Elisabeth Cole, World Wildlife Fund, and St. Jude Children's Research Hospital have entered into a Settlement and Release Agreement and this Trust is established for the purpose of implementing the Settlement and Release Agreement ("Settlement Agreement") by arranging for the orderly distribution and liquidation of certain assets transferred to this Trust.

B.    The Court in the Probate Proceedings has reviewed and approved the Settlement Agreement and this Trust and has directed the Alaska Trust Company to establish this Trust and implement the Settlement Agreement.

C.    The primary purpose of the Trust is to (i) oversee and direct the liquidation the Trust Assets for the benefit of the Beneficiaries in accordance with Treasury Regulation Section 301.7701-4 (d) and (ii) distribute any proceeds of the Trust Assets received by the Trust to the Beneficiaries. The Trust will not be operated with the objective of continuing or engaging in the conduct of a trade or business, except to the extent reasonably necessary to preserve or enhance the liquidation value of the Trust Assets, and consistent with the liquidating purpose of the Trust.

D.    This Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and the Liquidating Trustee shall operate and maintain the Trust in general compliance with the guidelines for liquidating trusts as set forth in Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation Section 1.671-4(a) and all subsequent guidelines regarding liquidating trusts issued by the Internal Revenue Service.

*EXHIBIT A*

*EMC 12/7/05*

## ARTICLE I

## DEFINITIONS

Section 1.01. Definitions

For purposes of this Trust Agreement, unless the context otherwise requires, the following terms will have the definitions indicated below, all of which definitions are substantive terms of this Trust Agreement capitalized terms used in this Trust Agreement that are not otherwise defined herein have the meanings ascribed to them in the Settlement Agreement, as appropriate. Defined terms include, as appropriate, all genders and the plural as well as the singular.

a. "Assets" means each and every item of property and interest whether tangible or intangible, real or personal, legal or equitable, liquidated or unliquidated, including, without limitation: (a) cash; (b) any amounts owed to the Transferor; including accounts receivable and contract rights and (c) all proceeds of the foregoing (including without limitation "proceeds" as defined in the Uniform Commercial Code as adopted in Alaska);

b. "Beneficiaries" means Elisabeth Cole ("Elisabeth Cole"), St. Jude Children's Research Hospital ( "St. Jude") and World Wildlife Fund, Inc. ( "WWF").

c. "Corporate Trust Office" means 1029 W. 3rd Avenue, Suite 510, Anchorage, Alaska 99501.

d. "Eligible Investments" means book-entry securities entered on the books of applicable registrar and held in the name of the Liquidating Trustee or its nominee and negotiable instruments or securities represented by instruments in bearer or registered for (registered in the name of the Liquidating Trustee or its nominee) that evidence:

(i) direct obligations of, or obligations fully guaranteed as to timely payment by, the United States of America or any agency thereof;

(ii) certificates of deposit (having original maturities of no more that 270 days of depository institutions or trust companies incorporated under the law of the United States of America or any one of its states (or domestic branches of foreign banks), subject to supervision and examination by federal or state banking or depository institution authorities;

(iii) commercial paper (having original maturities of no more than 270 days);

*EAC*
*12/7/05*

(iv)    notes (having original maturities of no more that 270 days) issued by any depository institution or trust company described in clause (ii) above;

(v)    bank time deposit and demand deposit accounts (having original maturities of no more that 270 days) of depository institutions or trust companies incorporated under the laws of the United States of America or any one of its states (or domestic branches of foreign banks), subject to supervision and examination by federal or state banking or depository authorities; or

(vi)    shares of entities commonly known as "money market" mutual funds or investment funds, the assets of which consist solely of the types of investments described in clauses (i) through (v) above.

(e)    "Currently Liquid Assets" means all cash, cash equivalents, and readily marketable securities held by ATC in its capacity as Personal Representative of the Estate or Trustee of the Charitable Remainder Trust as of June 30, 2005 and does not include promissory notes, real estate, claims, causes of action, fractional interests in leases or real property subject to lease, and other similar property or assets generally considered not to be liquid or the proceeds thereof received after June 30, 2005. In determining Currently Liquid Assets, all expenses and distributions paid from the Estate and the Charitable Remainder Trust shall be made from the Currently Liquid Assets and if paid or transferred to the Liquidating Trust shall retain their character as such.

(f)    "Fiscal Year" means the trust's tax and accounting reporting period which, unless otherwise provided by the Liquidating Trustee, will be the calendar year.

(g)    "Liquidating Trust" means the trust created pursuant to this Trust Agreement in accordance with the Settlement Agreement.

(h)    "Person" means an individual, corporation, business trust, partnership, joint venture, association, joint stock company, limited liability company, entity or unincorporated association.

Section 1.02. Rules of Construction

Except as otherwise expressly provided in this Trust Agreement or unless the context otherwise clearly requires:

(a)    References to designated articles, sections, and other subdivisions of this Trust Agreement, such as "Section 6.12 (a)", refer to the designated article, section, or other subdivision of this Trust Agreement as a whole and to all subdivisions of the designated article, section, or other subdivision. The words "herein, "hereof," "hereto," "hereunder" and other words of similar import refer to this Trust Agreement as a whole and not to any particular article, section or other subdivision of this Trust Agreement.

12/7/05

(b)    Any term that relates to a document or a statute, rule, or regulation includes any amendments, modifications, supplements or any other changes that may have occurred since the document, statute, rule, or regulation came into being, including changes that occur after the date of this Trust Agreement.

(c)    Any party may execute any of the requirements under this Trust Agreement either directly or through others, and the right to cause something to be done rather than doing it directly shall be implicit in every requirement under this Trust Agreement.  Unless a provision is restricted as to time or limited as to frequency, all provisions under this Trust Agreement are implicitly available from time to time.

(d)    The term "including" and all its variations mean "including but not limited to."  Except when used in conjunction with the word "either," the word "or" is always used inclusively (for example, the phrase "A or B" means "A or B or both" not "either A or B but not both").

(e)    All accounting terms used in an accounting context and not otherwise defined shall be construed in accordance with generally accepted accounting principles.

## ARTICLE II

## ORGANIZATION

Section 2.01.  Name

This Trust shall be known as "Trust for Liquidation of Assets," in which name the Liquidating Trustee may conduct the affairs of the Trust.

Section 2.02.  Office

The office of the Trust shall be in care of the Liquidating Trustee at his Corporate Trust Office or at any other address in the State of Alaska that the Liquidating Trustee may designate by written notice to the Beneficiaries.

Section 2.03.  Declaration of Trust

For good and valuable consideration, the receipt of which is hereby acknowledged by the undersigned, and pursuant to the terms of the Settlement Agreement and the Court Order in the Probate Proceedings. The Transferor executes this Trust agreement and irrevocably transfers, absolutely assigns, conveys, sets over, and delivers to the Liquidating Trustee, and its successors and assigns, all of its right, title and interest in and to the Assets transferred pursuant to the Settlement Agreement and Court Order in the Probate Proceedings in trust to and for the benefit of the Beneficiaries for the uses and purposes stated herein and in the Settlement

Agreement, except as may otherwise be specifically provided by the Settlement Agreement. Effective as of the date hereof, the Liquidating Trustee shall have all the rights, powers and duties set forth herein and pursuant to applicable law for accomplishing the purposes of the Trust. The Liquidating Trustee is hereby authorized to file with the Superior Court for the State of Alaska, Third Judicial District at Anchorage any documents necessary to register this Liquidating Trust.

Section 2.04. Appointment of Liquidating Trustee

The Liquidating Trustee is hereby appointed as Trustee of the Liquidating Trust effective as of the date hereof, to have all the rights, powers and duties set forth herein.

Section 2.05. Acceptance of Trust

The Liquidating Trustee accepts the Assets and agrees to hold and administer the trust Assets for the benefit of the Beneficiaries subject to the terms and conditions of this Trust Agreement and the Settlement Agreement.

Section 2.06. Tax Treatment of Trust

For United States federal and applicable state income tax purposes, the transfer of the Assets to the Trust pursuant to and in accordance with the Settlement Agreement shall be reported as a disposition of the Assets directly to and for the benefit of the Beneficiaries immediately followed by a contribution of the Assets by the Beneficiaries to the Trust for the benefit of the Beneficiaries. Elisabeth Cole will be treated as the grantor of the Trust.

Section 2.08. Nature and Purpose of the Trust

(a)    Purpose. The Trust is a liquidating trust pursuant to which the Liquidating Trustee is to (i) hold the Trust Assets and dispose of the same in accordance with this Trust Agreement and the Settlement Agreement in accordance with Treasury Regulation Section 301.7701-4(d) and (ii) oversee and direct the liquidation of the Trust Assets. Accordingly, the primary purpose of the Trust is to liquidate the Assets transferred to it with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonable necessary to preserve or enhance the liquidation value of the Trust Assets, and consistent with, the liquidating purpose of the Trust.

(b)    Manner of Acting. The Liquidating Trustee shall oversee the liquidation of the Trust Assets in a cost-effective manner in a reasonable time, with due regard to the terms of the Liquidating Trust, the Settlement Agreement and the interests of the Beneficiaries. The Liquidating Trustee shall make continuing efforts to promptly liquidate and dispose of the Assets, make prompt and timely distributions and not unduly prolong the duration of the Trust. In overseeing the selling of or realization on

*Edc*
*12/7/05*

the Assets, or otherwise monetizing them, the Liquidating Trustee will use its best efforts to obtain values which are reasonable under all the circumstances giving due consideration to the terms of the Liquidating Trust, the Settlement Agreement and the need to avoid unduly delaying final distribution of Assets. The liquidation of Assets may be accomplished either through the prosecution, compromise and settlement, abandonment or dismissal of any or all claims, judgments, rights or causes of action, or otherwise, subject to the terms of the Settlement Agreement. Notwithstanding anything to the contrary contained herein, the Trust shall not be permitted to retain cash or cash equivalents in excess of a reasonable amount to: (i) meet all distributions and contingent liabilities; (ii) establish such reserves as provided herein or (iii) preserve or enhance the liquidation value of Assets during the term of the Trust. It is recognized that in the course of selling some of the real estate assets it may be necessary to undertake seller financing on commercially reasonable terms. In the event the Liquidating Trustee engages in seller financing by accepting promissory notes secured by deeds of trust or other security devices, the Liquidating Trustee may in the exercise of its reasonable discretion sell such promissory notes and the security therefor to third parties including commercial buyers of promissory notes and the security therefor.

(c)    Relationship.  This Trust Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust. The Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Liquidating Trustee or Beneficiaries, or any of then, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint ventures.    The relationship of the Beneficiaries to the Liquidating Trustee shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Trust Agreement.

Section 2.09.  Incorporation of Settlement Agreement

The Settlement Agreement is hereby incorporated into this Trust Agreement and made a part hereof by this reference.

## ARTICLE III

## BENEFICIARIES

Section 3.01.  Rights of Beneficiaries

Each Beneficiary shall hold a beneficial interest subject to all of the terms and provisions of this Trust Agreement and the Settlement Agreement. The interest of a Beneficiary of the Trust is in all respects personal property, and upon the death, insolvency or incapacity of an individual Beneficiary, such Beneficiary's interest shall pass to the legal representative of such Beneficiary and such death, insolvency or

*JSC*
*12/7/05*

incapacity shall not terminate or affect the validity of this Trust Agreement. A Beneficiary shall have not title to, right to, possession of, management of, or control of, the Trust Assets. No surviving spouse, heir or devisee of any deceased Beneficiary shall have any of dower, curtesy, homestead, family allowance, exempt property allowance or their equivalent or inheritance, or of partition, or any other right, statutory or otherwise, in the Assets held by the Liquidating Trustee, but the whole title to all the Trust Assets shall be vested in the Liquidating Trustee and the sole interest of the Beneficiaries shall be the rights and benefits given to such persons under this Trust Agreement.

Section 3.02. Spendthrift Trust Provision

The interest of a beneficiary of any trust hereunder may not be either voluntarily or involuntarily transferred before the payment or delivery of the interest to the beneficiary by the Trustees, within the meaning of Alaska Statute 34.40.110(a). No beneficial interest in any trust created hereunder, whether in income or in principal, shall be subject to anticipation, assignment, pledge, sale or transfer in any manner, and no beneficiary of any such trust or other person interested therein shall have the power to anticipate, encumber or charge his or her interest therein, and no trust estate created hereunder shall be liable for or subject to the debts, contracts, obligations, liabilities or torts of any beneficiary of any such trust or other person interested therein; provided, however, that nothing contained herein shall be construed as preventing any beneficiary from making a qualified disclaimer within the meaning of Section 2518 of the Code with respect to interests created herein.

## ARTICLE IV

## THE LIQUIDATING TRUSTEE

Section 4.01. Appointment and Tenure of Liquidating Trustee

The Liquidating Trustee is the Alaska Trust Company. The Liquidating Trustee shall serve as Trustee until its successor shall have been appointed in accordance with Section 4.02 or until resignation or removal.

Section 4.02. Tenure, Removal, and Replacement of the Liquidating Trustee

The authority of the Liquidating Trustee will be effective as of the Effective Date and will remain and continue in full force and effect until all of the Assets are liquidated in accordance with the Settlement Agreement and the terms of the Liquidating Trust, the Assets have been completely distributed in accordance with the Settlement Agreement and the terms of the Liquidating Trust, and all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities. The service of the Liquidating Trustee will be subject to the following:

12/7/05

(a)    The Liquidating Trustee will serve until resignation pursuant to subsection (b) below, or removal pursuant to subsection (c) below;

(b)    The Liquidating Trustee may resign at any time by providing a written notice of resignation to the Beneficiaries. Such resignation will be effective when a successor is appointed as provided herein;

(c)    The Liquidating Trustee may be removed by order of the Court in the Probate Proceedings or other court of competent jurisdiction, or upon the written agreement of all Beneficiaries;

(d)    In the event of a vacancy in the position of the Liquidating Trustee (whether by removal or resignation), the vacancy will be filled by the appointment of a successor Liquidating Trustee. The successor Liquidating Trustee shall be appointed by the written agreement of all Beneficiaries. In the absence of such agreement the successor Liquidating Trustee shall be appointed by court order in the Probate Proceedings or other court of competent jurisdiction;

(e)    Immediately upon appointment of any successor Liquidating Trustee, all rights, powers, duties, authority, and privileges of the predecessor Liquidating Trustee hereunder will be vested in and undertaken by the successor Liquidating Trustee without any further act; and the successor Liquidating Trustee will not be liable personally for any act or omission of the predecessor Liquidating Trustee; and

(f)    Upon the resignation of the Liquidating Trustee and the appointment of a successor, the resigning Liquidating Trustee will, if applicable, convey, transfer and set over to the successor by appropriate instrument or instruments all of the funds, if any, then unconveyed or otherwise undisposed of and all other assets then in its possession and held hereunder.

Section 4.03. Acceptance of Appointment by Successor Liquidating Trustee

Any successor Liquidating Trustee appointed hereunder shall execute an instrument accepting such appointment and assuming all of the obligations of the retiring Liquidating Trustee hereunder and thereupon the successor Liquidating Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts, and duties of its predecessor in the Trust hereunder with like effect as if originally named herein; but the retiring Liquidating Trustee nevertheless shall, if applicable, when requested in writing by the successor Liquidating Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Liquidating Trustee upon the trust herein expressed, all the estate, properties, rights, powers and trusts of such retiring Liquidating Trustee, and shall duly assign, transfer and deliver to such successor Liquidating Trustee all property and money held hereunder.

*EAC*
*12/7/05*

TRUST FOR LIQUIDATION OF ASSETS (final)
10042\01 - Page 8

Section 4.04. Authority

Subject to any limitations contained in, or as otherwise provided by, this Trust Agreement or in the Settlement Agreement, the Liquidating Trustee shall have the following powers, authorities and duties, by way of illustration and not of limitation:

(a)    To hold any and all assets received including assets received from any of the Beneficiaries or the Transferor;

(b)    To liquidate or direct the Transferor to liquidate any and all of the Trust Assets in accordance with the terms of this Trust Agreement and the Settlement Agreement;

(c)    To manage, sell, transfer, assign or deal in any other manner with any of the Trust Assets in such manner not otherwise provided for herein as the Liquidating Trustee may deem advisable consistent with the terms of the Settlement Agreement;

(d)    To release, convey or assign or direct the Transferor to release, convey or assign any right, title or interest in or to the Trust Assets or any portion thereof; and to do or direct the Transferor to do all things necessary or appropriate to perform any obligations required to be performed by the Trust under the terms of any agreement for the sale of any of the Trust Assets, including the execution and delivery of any deeds, assignments, bills of sale or other instruments of conveyance necessary or appropriate to transfer and convey such assets;

(e)    To undertake any actions necessary or desirable to operate or conduct the affairs of the Estate or Transferor or the Liquidating Trust, including entering into contracts and other agreements and any other action necessary to preserve or enhance the liquidation value of the Assets;

(f)    To collect, receive, hold, manage, invest and distribute any and all money and other property of whatsoever kind or nature due or owing or belonging to the Liquidating Trust and to give full discharge and acquaintance therefore;

(g)    Pending sale or other disposition or distribution, to retain all or any Assets regardless of whether or not such Assets are, or may become, underproductive, unproductive or a wasting Asset (the Liquidating Trustee shall be permitted to keep any part of the Trust Assets as may be in cash, or as may be converted into cash, uninvested for a reasonable period of time and the Liquidating Trustee shall not be chargeable with interest thereon);

(h)    To form any entity and sell, transfer, convey or assign or direct the Transferor to sell, transfer, convey or assign all or any part of the Assets, liabilities, profits or losses to such entity formed by any or all of the Liquidating Trustee, the Transferor and to convert the beneficial interest of the Beneficiaries into beneficial

12/7/05

interests, or other interest, of such entity formed pursuant to the action or direction of the Liquidating Trustee;

(i)    Subject to the terms of the Settlement Agreement and the more specific terms of this Trust, to retain and set aside funds out of the Trust Assets as the Liquidating Trustee shall deem necessary or appropriate to pay, or provide for the payment of: (i) the unpaid liabilities, debts or obligations of the Trust; (ii) contingencies, and (iii) the expenses of administering the Trust Assets;

(j)    To do and perform or to direct the Transferor to do or perform any acts or things necessary or appropriate for the conservation and protection of the Assets, including any acts or things necessary or appropriate to maintain Assets held by the Liquidating Trustee or the Transferor pending sale or other disposition thereof or distribution thereof to the Beneficiaries, and in connection therewith to employ brokers or other agents and to confer upon them such authority as the Liquidating Trustee may deem necessary or appropriate, and to pay reasonable compensation therefore;

(k)    To file any and all documents and take any and all such other action as the Liquidating Trustee, in its sole judgment, may deem necessary in order that the Liquidating Trustee may lawfully carry out the purposes of the Trust in any jurisdiction;

(l)    To pay and discharge or direct the Transferor to pay and discharge any costs, expenses, professional fees or obligations deemed necessary to preserve or enhance the liquidation value of the Trust Assets, discharge duties under the Settlement Agreement or perform the purpose of the Settlement Agreement and this Trust Agreement; payment of such fees and expenses will not require court approval;

(m)    To open and maintain bank accounts and deposit funds, draw checks and make disbursements in accordance with the Settlement Agreement and this Trust Agreement;

(n)    To select and engage such Persons and select and engage such professional advisors, including, without limitation, any Professional previously retained by the Personal Representative of the Estate or the Transferor in accordance with the terms of the Settlement Agreement and this Trust Agreement, as the Liquidating Trustee deems necessary and desirable to assist it in fulfilling its obligations under this Trust Agreement and the Settlement Agreement and pay the reasonable fees of such Persons and reimburse such Persons for their reasonable out-of-pocket costs and expenses;

(o)    To sue and be sued;

(p)    To enforce, waive, assign or release rights, privileges or immunities of any kind;

*JAC*
*12/7/05*

(q)    To vote any share or shares of stock or interests and otherwise exercise the rights appurtenant to ownership of such stock or interests;

(r)    To in general, without in any manner limiting any of the foregoing, deal with the Trust Assets or any part or parts thereof in all or other ways as would be lawful for any person owning the same to deal therewith, whether similar to, or different from the ways herein specified, but in all events subject to and consistent with the terms of the Settlement Agreement;

(s)    To obtain and pay for insurance coverage relative to the proper performance of its duties under the Settlement Agreement and this Trust Agreement;

(t)    To establish and maintain the Accounts, and establish such additional reserves, funds, and accounts of the Trust Assets as may be necessary for carrying out the provisions of this Trust Agreement which are consistent with the terms of the Settlement Agreement.

(u)    Without limitation, to do or direct the Transferor to do any and all things necessary to accomplish the purposes of the Settlement Agreement and this Trust Agreement.

Section 4.06. <u>Compensation    and    Reimbursement    of    Liquidating    Trustee    and    Professionals</u>

The Liquidating Trustee shall be entitled to receive reasonable compensation for services in the administration of the Trust. Any professionals or any Person retained by the Liquidating Trustee will be entitled to reasonable compensation for services rendered at a rate reflecting actual time billed by such professional or Person on an hourly basis, at the standard billing rates in effect at the time of service or such other rate or basis of compensation that is reasonable. All reasonable out-of-pocket expenses incurred by the Liquidating Trustee or any other professional or other Person retained by the Liquidating Trustee will be reimbursed as an expense of the Trust.

Section 4.07. <u>No Implied Obligations</u>

No other further covenants or obligations shall be implied into this Trust Agreement. The Liquidating Trustee shall not be responsible in any manner whatsoever for the correctness of any recital, statement, representation, or warranty herein, or in any documents or instrument evidencing or otherwise constituting a part of the Trust Assets.

*CdC*
*12/7/05*

## ARTICLE V

## ADMINISTRATION OF THE TRUST

Section 5.01.  Distributions

Notwithstanding anything to the contrary contained herein, the Liquidating Trustee shall make at least annual distributions pursuant to and in accordance with the Settlement Agreement and this Trust Agreement; provided, however, that the Liquidating Trustee shall not be required to make de minimis distributions. Notwithstanding the foregoing, the Liquidating Trustee shall, in accordance with the Settlement Agreement and this Trust Agreement distribute at least annually the net income of the Trust and the net proceeds from the disposition of the Assets in excess of such amounts reasonably necessary to preserve or enhance the liquidation value of the Assets during the term of the Trust, to pay reasonable estimated administrative expenses and other liabilities. The Liquidating Trustee may withhold from amounts distributable to any person any and all amounts, as determined in the Liquidating Trustee's reasonable discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

Section 5.02.  Eligible Investments

Except for assets received directly from any of the Beneficiaries, the Estate or Charitable Remainder Trust all funds and assets held by the Liquidating Trustee shall be invested in Eligible Investments selected by the Liquidating Trustee. Eligible Investments may include investments for which corporations related to the Liquidating Trustee or an Affiliate of such Persons provides services.

Section 5.03.  Distributions from Currently Liquid Assets (Initial Distribution)

From Currently Liquid Assets the Liquidating Trustee shall reserve the sum of Two Hundred Thousand Dollars ($200,000) as an Initial Reserve against reasonable administrative expenses and expenses in preserving, realizing upon and collecting Assets of the Liquidating Trust. The Liquidating Trustee shall then distribute Currently Liquid Assets remaining after establishing the initial reserve, among Elisabeth Cole, St. Jude and WWF as follows: the Liquidating Trustee shall determine the sum of (a) attorney fees and other expenses paid to attorneys and others engaged by Elisabeth Cole from the Estate and the Charitable Remainder Trust, (b) the amounts paid directly to Elisabeth Cole by the Estate or the Charitable Reminder Trust based on the Elisabeth Cole Claims, (c) the amounts paid directly to Elisabeth Cole by the Charitable Remainder Trust in satisfaction of her annuity payments from the Charitable Remainder Trust through June 30, 2005, and (d) all Currently Liquid Assets received by the Liquidating Trustee (subject to the above described initial reserve). Twenty-five Percent (25%) of that sum shall be promptly distributed by the Liquidating Trustee to WWF and

*SdC*
*12/7/05*

Twenty-five Percent (25%) of that sum shall be promptly distributed to St. Jude by the Liquidating Trustee.

After providing for the Initial Reserve and after making the above distributions to WWF and St. Jude, the Liquidating Trustee shall reserve a reasonable amount from the remaining Currently Liquid Assets to cover, satisfy or reimburse any amounts paid or to be paid by the Estate based on the Mennucci claim regardless of whether paid in satisfaction or regarding defense against the Mennucci Claim and any tax liens against the Texas Ranch property which relate to taxes due from Elisabeth Cole or to satisfy any judgments against Elisabeth Cole which are liens against the Texas Ranch property, (excluding the R.W. Leasing and Kastani Judgments) including, but not limited to the judgment in favor of Tokai Financial Services, Inc., f/k/a Master Lease against Elisabeth Cole in the amount of Forty Thousand Six Hundred Forty-two Dollars ($40,642) plus costs, interest and attorneys' fees, the judgment in favor of Lake Jackson Brazos Square, Ltd. against Elisabeth Cole in the amount of Six Thousand One Hundred Thirty-eight and 52/100 Dollars ($6,138.52) plus costs, interest and attorneys' fees, and Texas State Tax Liens dated June 30, 1998 and August 14, 1998 in the respective amounts of One Thousand Four Hundred Ninety-seven and 52/100 Dollars ($1,497.52) plus penalty and interest and One Thousand Five Hundred Seventy-two and 38/100 Dollars ($1,572.38) plus penalty and interest. It is estimated that the following reserves will be sufficient: Fifty Thousand Dollars ($50,000.00) for the judgment in favor of Tokai Financial Services, Inc., f/k/a Master Lease against Elisabeth Cole, Ten Thousand Dollars ($10,000) for the judgment in favor of Lake Jackson Brazos Square, Ltd. against Elisabeth Cole, Two Thousand Five Hundred Dollars ($2,500) each for the Texas State Tax Liens dated June 30, 1998 and August 14, 1998 (hereinafter collectively known as the "Judgment Reserve"), to be administered as provided below.

The Liquidating Trustee shall account for the Judgment Reserve as a separate trust and shall cooperate in the disbursement of funds from the Judgment Reserve for the satisfaction of the judgment. Upon disposition of all judgments, whether by satisfaction, settlement, avoidance or any other means, any funds remaining in the Judgment Reserve shall be promptly distributed to Elisabeth Cole.

Any remaining Currently Liquid Assets after payment to WWF and St. Jude as provided above and subject to the above-described Initial Reserve and Judgment Reserve shall be promptly distributed by the Liquidating Trustee to Elisabeth Cole.

**By way of example**, if:

- The total of Currently Liquid Assets held by the Estate and the Charitable Remainder Trust is Four Million Dollars ($4,000,000),
- the Estate and the Charitable Remainder Trust collectively pay One Million Dollars ($1,000,000) for attorneys' fees and other expenses paid to attorneys and others engaged by Cole,
- the Charitable Remainder Trust pays Cole (for transfer to the Liquidating Trust) the sum of Eight Hundred Thousand Dollars ($800,000) in partial satisfaction of the Elisabeth Cole claim, and

- the Charitable Remainder Trust pays Cole (for transfer to the Liquidating Trust) the sum of Two Hundred Thousand Dollars ($200,000) in partial satisfaction of her prior annuity payments,

the Initial Distributions shall be calculated as follows:

| | In the Estate And CRT | In the Liquidating Trust | In the Admin Reserve | In the Judgment Reserve |
|---|---|---|---|---|
| Currently Liquid Assets held by the Estate and the Charitable Remainder Trust prior to any payments or distributions | $4,000,000 | | | |
| Less Attorneys' fees and costs paid by Estate and CRT | (1,000,000) 3,000,000 | | | |
| Amount of Currently Liquid Assets transferred From the Estate to the Liquidating Trust in partial satisfaction of the Elisabeth Cole Claim | (800,000) 2,200,000 | 800,000 800,000 | | |
| Amount of Currently Liquid Assets transferred from the CRT to the Liquidating Trust in Partial Satisfaction of the annuity | (200,000) 2,000,000 | 200,000 1,000,000 | | |
| Remaining Amount transferred to the Liquidating Trust | (2,000,000) — | 2,000,000 3,000,000 | | |
| Administrative Reserve | | (200,000) 2,800,000 | 200,000 200,000 | |
| Amount Distributed to WWF (2,800,000 + 1,000,000) x 25% | | (950,000) 1,850,000 | | |
| Amount Distributed to St. Jude (2,800,000 + 1,000,000) x 25% | | (950,000) 900,000 | | |
| Judgment Reserves | | (65,000) 835,000 | | 65,000 65,000 |
| Amount Distributed to Elisabeth Cole | | (835,000) | | |
| Balances after initial Distribution | — | — | 200,000 | 65,000 |

Recap:

Attorneys' fees and costs paid
by the Estate and the CRT          1,000,000

Administrative Reserve             200,000

Distribution to WWF                950,000

TRUST FOR LIQUIDATION OF ASSETS (final)
10042\01 - Page 14

*CdC
12/7/05*

| | |
|---|---|
| Distribution to St. Jude | 950,000 |
| Judgment Reserve | 65,000 |
| Distribution to Elisabeth Cole | 835,000 |
| Total | 4,000,000 |

Section 5.04. <u>Subsequent Distributions</u>

Liquidating Trustee shall distribute remaining assets as they are liquidated Fifty Percent (50%) to St. Jude and Fifty percent (50%) to WWF until such time that WWF has received a total of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000) in distributions and St. Jude has received a total of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000) in distributions. Once St. Jude and WWF have received a combined total of Three Million Five Hundred Thousand Dollars ($3,500,000), the Liquidating Trustee shall take all necessary steps to promptly terminate the Liquidating Trust, pay all remaining costs and expenses of the Liquidating Trust, and promptly distribute all remaining assets to Elisabeth Cole.

Section 5.05. <u>Operating Expenses</u>

The Liquidating Trustee will utilize the initial reserve and such additional reserve as Liquidating Trustee may reasonably determine to be proper and necessary to pay all costs and expenses related to the care and maintenance of the Assets, including, without limitation (i) costs of selling the Assets and (ii) any expenses of the Trust (including the fees and expenses of the Liquidating Trustee and its professionals in pursuing, without limitation, all judgments or other collection or litigation matters).

Section 5.6. <u>Final Distribution</u>

If the existence of the Trust shall terminate, the Liquidating Trustee shall, as expeditiously as is consistent with the conservation and protection of the Assets, distribute the Assets. In such circumstances the Trustee shall distribute the Assets to the Beneficiaries as the Trustee may determine their interests under the Settlement Agreement and this Liquidating Trust provided all of the Beneficiaries agree in writing that the proposed distributions are consistent with the respective interests of the Beneficiaries. In the absence of such agreement among the Beneficiaries, the Liquidating Trust shall petition the Court in the Probate Proceedings or another court of competent jurisdiction to determine appropriate distributions to the Beneficiaries in accordance with their interests under this Liquidating Trust and the Settlement Agreement.

Section 5.7.  Tax and Other Reports to Beneficiaries

As soon as practical after the end of each calendar month, the Liquidating Trustee shall submit to each Beneficiary a statement and accounting report reflecting assets held in the Liquidating Trust and transactions undertaken during the time period of the report.

Section 5.8.  Tax Returns/Tax Matters

(a)    The Liquidating Trustee shall file all required tax returns and other filings with governmental authorities on behalf of the Trust and the Assets it holds for time periods ending on or before the termination of this Trust or make such other reports as may be appropriate.  Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Liquidating Trustee) the Liquidating Trustee shall file required tax returns for the Trust as a grantor trust pursuant to Treasury Regulations Section 1.671(a).

(b)    All net income of the Trust and net proceeds from the disposition of the Trust Assets shall be subject to United States federal and applicable state income taxation in the year such net income or net proceeds are realized, whether or not such amounts are immediately distributed to the Beneficiaries or retained by the Liquidating Trustee in such reserves as may be appropriate.

Section 5.9.  Limitations on Liquidating Trustee

(a)  .  The Liquidating Trustee shall not at any time, on behalf of the Trust or Beneficiaries, (i) enter into or engage in any trade or business, and no part of the Trust Assets or the proceeds, revenue or income therefrom shall be used or disposed of by the Trust in furtherance of any trade or business, except to the extent reasonably necessary to preserve and enhance the liquidation value of the Trust Assets, or (ii) except as provided below, reinvest any assets.

(b)  .  All moneys and other assets received by the Liquidating Trustee shall, until distributed or paid over as herein provided, be held in trust for the benefit of the Beneficiaries, but need not be segregated from other Assets, unless and to the extent required by law or as otherwise specified in this Trust Agreement.

(c)    The Liquidating Trustee shall be restricted to the:  holding, collection, conservation, protection and administration of Assets in accordance with the provisions of this Trust Agreement and the Settlement Agreement, and the Payment and distribution of amounts as set forth herein for the purposes set forth in this Trust Agreement.  The scope of any permissible investments shall be limited to include only

*PAC*
*12/7/05*

those investments, or shall be expanded to include any additional investments, as the case may be, that a liquidating trust, within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modifications in the Internal Revenue Service guidelines, whether set forth in Internal Revenue Service rulings, other Internal Revenue Service pronouncements or otherwise. Any determination by the Liquidating Trustee as to what actions are in the best interests of the Trust shall be determinative.

(d)    With regard to the property interest designated as the one-fourth (1/4) interest 3.84 ac lease Poughkeepsie, New York (Holiday Inn lease) the Liquidating Trust shall retain this property interest and not sell, dispose of or otherwise liquidate it earlier than five (5) years from the Effective Date. After the passage of five (5) years from the Effective Date the Liquidating Trustee may proceed to liquidate or otherwise dispose of this property interest as it deems appropriate in its reasonable discretion under the terms of the Liquidating Trust and the Settlement Agreement.

Section 5.10. Further Authorization

The Liquidating Trustee shall be entitled to seek such orders, judgments, injunctions and rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Settlement Agreement and this Trust Agreement.

Section 5.11. Protection of Persons Dealing With the Liquidating Trustee

Any transfer of the Trust Assets, or any part thereof, shall bind the Beneficiaries and shall be effective to transfer all right, title and interest of the Liquidating Trustee and the Beneficiaries in and to the Trust Assets or such part thereof. No purchaser of the Trust Assets or any portion thereof shall be required to inquire as to the authorization, necessity, expediency or regularity of such transfer or as to the application of any proceeds thereof. Any person dealing with the Liquidating Trustee shall be fully protected in relying upon a certificate signed by the Liquidating Trustee that he has authority to take any action under this Trust Agreement.

## ARTICLE VI

## DURATION OF TRUST

Section 6.01. Duration of Trust

This Trust shall terminate on the earlier of (i) the date of entry by the court in the Probate Proceedings or other court of competent jurisdiction of an order directing termination of the Liquidating Trust; (ii) the date upon which all of the Trusts Assets have been distributed to the Beneficiaries and there are no remaining Assets expected to be received; or (iii) five (5) years from the Effective Date, provided, however, the

Liquidating Trustee may petition the Court in the Probate Proceedings or any court of competent jurisdiction for an order authorizing an extension of the term of the Liquidating Trust in the event the Liquidating Trustee believes a continuation of the term is appropriate to properly discharge its duties and obligations under the Liquidating Trust and the Settlement Agreement.

## ARTICLE VII

## LIMITATIONS ON LIABILITY FOR ACTS OF PREDECESSOR

Section 7.01.  No Liability for Acts of Predecessor

No successor Liquidating Trustee shall be in any way responsible or liable for the acts or omissions or any predecessor Liquidating Trustee in office prior to the date on which such Person becomes the Liquidating Trustee, nor shall such successor Liquidating Trustee be obligated to inquire into the validity or propriety of any such act or omission unless such successor Liquidating Trustee expressly assumes such responsibility.  Any predecessor Liquidating Trustee shall be liable to such successor Liquidating Trustee by the predecessor Liquidating Trustee and shall further be responsible only for those Trust Assets included in such statement.

## ARTICLE VIII

## MISCELLANEOUS PROVISIONS

Section 8.01.  Notices

All notices, requests or other communications to the parties hereto shall be in writing and shall be sufficiently given only if (i) delivered in person; (ii) sent by electronic facsimile communication, as evidenced by a confirmed fax transmission report; (iii) sent by registered or certified mail, return receipt requested; or (iv) sent by commercial delivery service or courier.  Until a change of address is communicated, as provided below, all notices, requests and other communications shall be sent to the parties at the following addresses or facsimile numbers:

If to the Liquidating Trustee, to:

Alaska Trust Company
1029 W. 3rd Ave., Suite 510
Anchorage, AK 99501

If to World Wildlife Foundation, Inc.:

Lorene King
St. Jude Children's Research Hospital

_12_/7/05

501 St. Jude Place
Memphis, TN  38105

with a copy to:

Robert L. Manley
Manley & Brautigam, P.C.
845 K Street
Anchorage, AK 99501

If to St. Jude Children's Research Hospital:

David Flickinger
World Wildlife Fund .
1250 24th Street, NW
Washington, DC  20037


with a copy to:

Robert L. Manley
Manley & Brautigam, P.C.
845 K Street
Anchorage, AK 99501

If as to Elisabeth Cole:

C/O Darryl Jones, Esq.
109 W. 6th Ave., Suite 200
Anchorage, AK 99501

with a copy to:

Darryl Jones, Esq.
109 W. 6th Ave., Suite 200
Anchorage, AK 99501

All notices shall be effective and shall be deemed delivered (i) if by personal delivery, delivery service or courier, on the date of delivery, (ii) if by electronic facsimile communication, on the date of the transmission of the communication; and (iii) if by mail, on the date of receipt.  Any party from time to time may change its address, facsimile number or other information for the purpose of notices to that party by giving notice specifying such change to the other party hereto.

TRUST FOR LIQUIDATION OF ASSETS (final)
10042\01 - Page 19

*JJC*
*12/7/05*

Section 8.02. Effectiveness

This Trust Agreement shall become effective upon approval by Order of the Court in the Probate Proceedings (the Effective Date).

Section 8.03. Counterparts

This Trust Agreement may be executed in one or more counterparts, all of which shall be taken together to constitute one and the same instrument.

Section 8.04. Governing Law

This Trust Agreement shall be governed by, construed under and interpreted in accordance with, the laws of the State of Alaska.

Section 8.05. Severability of Provisions

Any provision of this Trust Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Trust Agreement or affecting the validity or enforceability of any of the terms or provisions of this Trust Agreement in any other jurisdiction.

Section 8.06. Entire Agreement

This Trust Agreement (including the Recitals) and the Settlement Agreement constitute the entire agreement by and among the parties and there are no representations, warranties, covenants or obligations except as set forth herein or therein. This Trust Agreement, the Settlement Agreement and the Order of the Court in the Probate Proceedings supersede all prior and contemporaneous agreements, understandings, negotiations, discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. Except as otherwise specifically provided herein, in the Settlement Agreement, nothing in this Trust Agreement is intended or shall be construed to confer upon or to give any person other than the parties thereto and their respective heirs, administrators, executors, successors, or assigns any right to remedies under or by reason of this Trust Agreement.

Section 8.07. Effect of Death, Incapacity or Bankruptcy of Beneficiary

The death, incapacity or bankruptcy of a Beneficiary during the terms of this Trust Agreement shall not operate to terminate the Trust Agreement, nor shall it entitle the representatives or creditors of the Beneficiary to an accounting, or to take any action in the courts or elsewhere for the distribution of the Trust Assets or for a partition thereof, nor shall it otherwise affect the rights and obligations of any Beneficiary.

TRUST FOR LIQUIDATION OF ASSETS (final)
10042\01 - Page 20

*EAC*
*12/7/05*

Section 8.08.  Effect of Trust on Third Parties

There is no obligation on the part of any purchaser or purchasers from the Liquidating Trustee or any agent of the Liquidating Trustee, or on the part of any other persons dealing with the Liquidating Trustee or any agent of the Liquidating Trustee, to see the application of the purchase money or other consideration passing to the Liquidating Trustee or any agent of the Liquidating Trustee, or to inquire into the validity, expediency or propriety of any such transaction by the Liquidating Trustee or any agent of the Liquidating Trustee.

Section 8.09.  Waiver

No failure or delay of any party to exercise any right or remedy pursuant to this Trust Agreement shall affect such right or remedy or constitute a waiver by such party of any right or remedy pursuant thereto.  Resort to one form of remedy shall not constitute a waiver of alternative remedies.

Section 8.10.  Relationship Created

The only relationship created by this Trust Agreement is the relationship between the Liquidating Trustee and the Beneficiaries.  No other relationship or liability is created.  Nothing contained in this Trust Agreement shall be construed so as to construe the Beneficiaries or their successors-in-interest as creating an association, partnership, or joint venture of any kind.

Section 8.11.  Tax Identification Numbers

The Liquidating Trustee may require any Beneficiary to furnish the Liquidating Trustee, (i) its employer or taxpayer identification number as assigned by the Internal Revenue Service, and (ii) such other records or documents necessary to satisfy the Liquidating Trustee's tax reporting obligations (including but not limited to, certificates of non-foreign status).  The Liquidating Trustee may condition the payment of any distribution to any Beneficiary upon receipt of such identification number and requested documents.

*SAC*
*12/7/05*

IN WITNESS WHEREOF, the parties hereto have executed this Trust Agreement or caused this Trust Agreement to be duly executed by their respective officers thereunto duly authorized as of the day and year first above written.

TRANSFEROR:

Alaska Trust Company
in its Capacity as Trustee of the
Charitable Remainder Annuity Trust

Dated: _____, 2005

By _____
　　　　　Douglas Blattmachr
　　　　　President

Alaska Trust Company
in its capacity as Trustee of the Trust for
Liquidation of Assets

Dated: _____, 2005

By _____
　　　　　Douglas Blattmachr,
　　　　　President

## AMENDMENT TO
## SETTLEMENT AND RELEASE AGREEMENT

### I.  PARTIES

This Amendment to Settlement and Release Agreement amends the Settlement And Release Agreement entered into effective July 1, 2005, by and among the following Parties:

A.    Elisabeth Cole, M.D., (hereinafter "Elisabeth Cole") individually, as beneficiary of the Estate of Madeline Cole (hereinafter "Estate"), as beneficiary of the Testamentary Charitable Remainder Annuity Trust established under the will of Madeline Cole (hereinafter "Charitable Remainder Trust"), as owner, trustee or beneficiary of Food for Thought or Glendalough Trust, and in any other capacity relevant to the Estate, the Charitable Remainder Trust and this Agreement.

B.    The Alaska Trust Company (hereinafter "ATC"), the personal representative of the Estate and the trustee of the Charitable Remainder Trust.

C.    World Wildlife Fund (hereinafter "WWF"), a residual beneficiary of the Charitable Remainder Trust.

D.    St. Jude Children's Research Hospital (hereinafter "St. Jude"), a residual beneficiary of the Charitable Remainder Trust.

### II.  AMENDMENT

The provisions of this Amendment to Settlement and Release Agreement ARE intended to amend the Settlement and Release Agreement entered into effective as of July 1, 2005 and the two documents should be interpreted in conjunction with each other, provided, however, anything to the contrary notwithstanding, the provision of this Amendment to Settlement and Release Agreement should supersede the provisions of the Settlement and Release Agreement dated effective July 1, 2005 to the extent of any inconsistency.  All provisions of the Settlement and Release Agreement entered into effective as of July 1, 2005 not modified by the Amendment to Settlement and Release Agreement remain in full force and effect and are hereby ratified and affirmed.

AMENDMENT TO SETTLEMENT & RELEASE AGREEMENT 9/23/05 10:00 AM
10042\01 – Page 1



## III.    AMENDMENT TO RECITALS

Recital C of the Settlement and Release Agreement entered into effective July 1, 2005 is modified by deleting the first sentence which starts with "Elisabeth Cole has asserted" and ends with (hereinafter "Elisabeth Cole Claim") and that sentence is replaced by:

> Elisabeth Cole has asserted a claim against the Estate in the amount of $1,200,000 for monies owed her by her mother which were not paid prior to death relating to the Texas Ranch Property (hereinafter "Elisabeth Cole Claim"). Additionally, Elisabeth Cole asserts that the Estate owes her the approximate amount of $506,000 for funds due from a testamentary trust which the decedent should have established on the death of Alexander Cole under the New York probate of the Estate of Alexander Cole of which Elisabeth Cole would have been the residual beneficiary. (hereinafter "Elisabeth Cole Claim").

Recital G of the Settlement and Release Agreement entered into effective July 1, 2005, is modified by deleting the last sentence which starts with "The calculation" and ends with "by the court" and that sentence is replaced by:

> The annuity amount has been determined and is agreed to be $131,552.72. The interest rate on delayed annuity payments has been determined and is agreed to be 6.2% compounded annually.

## IV.    MODIFICATION TO SETTLEMENT TERMS

Paragraph A of Article IV, to the Settlement and Release Agreement entered into effective July 1, 2005, is deleted and replaced by the following:

> A.    The Elisabeth Cole claim shall be allowed by ATC in its capacity as personal representative of the Estate in the amount of $700,000 with regard to the Texas Ranch property and $300,000 with regard to the Estate of Alexander Cole for a total of $1,000,000, which amount shall not bear interest and shall not be subject to the assessment of attorneys' fees or costs in favor of Elisabeth Cole. The $1,000,000 under the Elisabeth Cole Claim shall be paid to ATC in its capacity as Trustee of the Trust for Liquidation of Assets ("Liquidating Trust") for distribution under the terms of the Settlement and Release Agreement entered into effective July 1, 2005, and the Liquidating Trust. The Liquidating Trust is attached hereto as Exhibit A and ATC shall petition the Court for approval of the Liquidating Trust to be established in substantially the form of the instrument attached hereto as Exhibit A.



Paragraph B of Article IV to the Settlement and Release Agreement entered into effective July 1, 2005, is deleted and replaced by the following:

      B.    Elisabeth Cole shall withdraw any claim or petition regarding the approval of payment of reasonable attorneys' fees incurred by her with regard to the administration of the Estate and the administration and implementation of the Charitable Remainder Trust whether seeking payment or reimbursement of such fees as an expense of the Estate, of Charitable Remainder Trust or otherwise and all such claims, motions or petitions, motions or petitions are withdrawn with prejudice, dismissed and released.

Paragraph C of Article IV to the Settlement and Release Agreement entered into effective July 1, 2005, is amended by the addition of the following sentence:

      Provided, however, anything to the contrary in the foregoing notwithstanding, any claims against the law firm of Davis & Davis, Trigg Davis, Deborah Randall, and the National Bank of Alaska (now Wells Fargo) are limited to the extent set forth in Article VI Release of the Settlement and Release Agreement entered into effective as of July 1, 2005, as may be amendment by this Amendment to Settlement and Release Agreement.

Paragraph F of Article IV, to the Settlement and Release Agreement entered into effective July 1, 2005, is deleted and replaced by the following:

      F.    The judgment against Elisabeth Cole in favor of ATC in the Alaska Litigation which has been assigned from the Estate to the Charitable Remainder Trust shall be assigned by the Charitable Remainder Trust to ATC as Trustee of the Liquidating Trust and ATC as Trustee of the Liquidating Trust shall continue to hold the judgment until such time as WWF and St. Jude have received distributions under the terms of this Agreement of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000) each, at which time ATC, as Trustee of the Liquidating Trust shall file a complete Satisfaction of Judgment. The judgment shall continue as a lien against the property of Elisabeth Cole until fully satisfied except that as to assets transferred or released to Elisabeth Cole from the Estate, Charitable Remainder Trust or Liquidating Trust under the terms of this Agreement and ATC shall release the lien as to such assets and shall not enforce it against such assets. ATC, in its capacity as Trustee of the Liquidating Trust, does hereby covenant not to execute on the judgment for a period of three (3) years from the date that the judgment is assigned to the Liquidating Trust except for the purposes of enforcing the transfer of

assets under this Agreement. Upon having secured court approval of termination of the Charitable Remainder Trust, having fully funding the Liquidating Trust, and having made the initial distribution from the Liquidating Trust, ATC shall file a partial satisfaction of judgment in the Alaska Litigation reflecting that the total unsatisfied portion of the judgment is $3,500,000 and upon WWF and St. Jude having received distributions under this Agreement (including the initial distribution) ATC shall file partial satisfactions of judgment reflecting such payments. For example, if WWF and St. Jude receive combined distributions of $1,900,000 the outstanding amount of the judgment will be reduced to $1,600,000 by partial satisfaction of judgment. Once WWF and St. Jude have received One Million Seven Hundred Fifty Thousand Dollars ($1,750,000) each from the Liquidating Trust then the judgment shall be released and forever discharged and ATC shall file appropriate documents.

Paragraph H of Article IV to the Settlement and Release Agreement entered into effective July 1, 2005, is deleted and replaced by the following:

     H.     Elisabeth Cole shall surrender, disclaim and renounce her interest in annuity payments from the Charitable Remainder Trust from January 1, 2006 forward. The parties agree that the annuity payments due Elisabeth Cole from the date of decedent's death until December 31, 2005, amount to $131,552.72 annually and all such annuity payments (reduced by the $50,000 previously paid) plus interest shall be paid to the Liquidating Trust for distribution in accordance with the terms of the Settlement and Release Agreement entered into effective as of July 1, 2005 and this Amendment to Settlement and Release Agreement and the Liquidating Trust. In addition, the remainder amount and all remaining assets of the Charitable Remainder Trust not allocated to annuity payments due Elisabeth Cole shall also be distributed to the Liquidating Trust for distribution in accordance with the terms of the Settlement and Release Agreement entered into effective July 1, 2005 and this Amendment to Settlement and Release Agreement and the Liquidating Trust.

Paragraph J of Article IV to the Settlement and Release Agreement entered into effective July 1, 2005, is deleted in its entirety.

Paragraph M of Article IV to the Settlement and Release Agreement entered into effective July 1, 2005, is amended by replacing the date of "June 30, 2005" with the date of "January 1, 2006."

Paragraph O of Article IV to the Settlement and Release Agreement entered into effective July 1, 2005, is amended by adding the following:

In addition, the Estate shall pay the attorney for St. Jude and WWF the sum of $3,000 as reimbursement for the costs and expenses incurred by St. Jude and WWF in assisting regarding the Estate and the Charitable Remainder Trust and related matters which payment shall be made on September 23, 2005 and shall pay a like amount for each successive month until such time as the Parties receives favorable Private Letter Rulings under ¶S or that ATC provides notice that favorable Private Letter Rulings under ¶S will not be available or until the end of May 2006, which ever occurs first. These amounts shall be paid by the Estate as an expense of Estate administration and payment shall commence upon signature of all parties to the Settlement and Release Agreement entered into effective July 1, 2005 and this Amendment to Settlement and Release Agreement.

A new ¶S to Article IV to the Settlement and Release Agreement entered into effective July 1, 2005, is added to read as follows:

S.        Prior to petitioning the court for approval of termination of the Charitable Remainder Trust, petitioning the court in the Probate Proceeding to close the Estate, petitioning the court for approval of the Liquidating Trust, allowing the Elisabeth Cole claim, notifying the Federal District Court regarding this matter, or releasing any judgments as provided under Settlement and Release Agreement entered into effective as of July 1, 2005 and this Amendment to Settlement and Release Agreement, the Parties shall seek and obtain Private Letter Rulings from the Internal Revenue Service requesting a determination that none of the Parties or the Charitable Remainder Trust will be subject to any penalty or termination taxation or similar penalties or excise or prohibited transaction taxes including but not limited to excise or other tax or penalties under IRC sections 507, 4941, 4942  or 4945 with regard to the transactions contemplated by the Settlement and Release Agreement entered into effective as of July 1, 2005 and this Amendment to Settlement and Release Agreement and the Liquidating Trust including but not limited to the termination of the Charitable Remainder Trust and the distributions under the Settlement and Release Agreement effective July 1, 2005 and this Amendment to Settlement and Release Agreement.   Provided, however, anything to the contrary notwithstanding, if ATC is unable to obtain or determines that it will be unable to obtain favorable Private Letter Rulings complying with the foregoing, then any party shall have the option to rescind Settlement and Release Agreement effective July 1, 2005 and this Amendment to Settlement and Release Agreement and make the provisions thereof to be of no force and effect except for ¶O of  the provisions of Article IV (Settlement Terms), of the Settlement and Release Agreement effective July 1, 2005 which ¶O shall survive rescission. Any party seeking to rescind under such conditions (and there shall be no



other basis or procedure for rescission), must provide written notice to ATC within ten (10) days from receipt of notice by their counsel in the Alaska Litigation or the Probate Proceedings or from receipt of actual notice (whichever is earlier) that favorable Private Letter Rulings complying with the foregoing will not be available.  In the event of rescission all of the terms of the Settlement and Release Agreement effective July 1, 2005 and this Amendment to Settlement and Release Agreement shall be considered settlement negotiations or offers to compromise claims or matters of disputed validity or merit. The terms of the Settlement and Release Agreement effective July 1, 2005 and this Amendment to Settlement and Release Agreement and the recitals shall not be used or offered to prove the validity or invalidity of any such matters, statements or claims or the accuracy of anything included in the Settlement and Release Agreement effective July 1, 2005 and this Amendment to Settlement and Release Agreement. ATC shall pay the reasonable costs and expenses it incurs in seeking all of the Private Letter Rulings from the Charitable Remainder Trust and such costs and expenses shall include the reasonable professional fees of counsel for Elisabeth Cole and of St. Jude and WWF for work done in assisting in the Private Letter Ruling process including, but not limited to review of the draft requests for Private Letter Rulings.  The reasonable professional fees of counsel for Elisabeth Cole and of St. Jude and WWF shall be paid at the rate of $195 per hour and supported by detailed invoices reflecting the time spent on assisting in the Private Letter Ruling process including, but not limited to review of the draft requests for Private Letter Rulings not to exceed $3,000 for counsel for Elisabeth Cole and not to exceed $3,000 for counsel for St. Jude and WWF.  The costs and expenses paid with regard to the Private Letter Ruling requests shall be a debit to the initial distribution to Elisabeth Cole as provided in Section 5.03 of the Liquidating Trust such that Elisabeth Cole shall bear this expense by a reduced initial distribution under Section 5.03 for the Liquidating Trust which in turn will result in an increased initial distribution (over the amount that the other beneficiaries of the Liquidating Trust would receive if this expense were not debited to Elisabeth Cole) to the other beneficiaries of the Liquidating Trust.  To the extent necessary, the Liquidating Trust shall be modified to reflect this provision. The provisions of this ¶S do not in any fashion limit the power and authority of ATC in any capacity to take actions which are proper in the discharge of its duties and which it would have the authority and power to take regardless of the existence of the Settlement and Release Agreement entered into effective as of July 1, 2005 and this Amendment to Settlement and Release Agreement.

The Private Letter Ruling requests will not seek a determination regarding any gift tax or estate tax issues or any income tax issues applicable to Elisabeth Cole except as specifically provided above. The Parties agree to execute such further and additional documents and provide such



additional information as may be reasonably necessary to secure the Private Letter Rulings.

A new ¶T to Article IV to the Settlement and Release Agreement entered into effective July 1, 2005, is added to read as follows:

T.    ATC shall pay Elisabeth Cole the sum of $3,000 on September 23, 2005      and a like amount on the 23rd day of each successive month until such time as the ATC receives a favorable Private Letter Ruling under ¶S or that ATC provides notice that a favorable Private Letter Ruling under ¶S will not be available or until May 23, 2006, which ever occurs first. These payments to Elisabeth Cole are in partial satisfaction of her annuity payments under the Charitable Remainder Trust.

A new ¶U to Article IV to the Settlement and Release Agreement entered into effective July 1, 2005, is added to read as follows:

U.    Elisabeth Cole understands that she will incur significant income tax liabilities with respect to the payment of annuities from the CRAT, and with respect to the termination of the CRAT and distribution of its assets. There may be other tax liabilities that result from such matters. Elisabeth Cole will be solely responsible for such tax liabilities. Elisabeth Cole acknowledges that she has obtained her own independent legal and tax advice regarding all tax matters, including the evaluation of existing and projected tax liabilities. No other party will be responsible for such liabilities nor for providing tax advice to Elisabeth Cole.

Financial and tax information has been provided to Elisabeth Cole by the tax attorneys and accountants hired by ATC. This financial and tax information consisted of approximations, and Elisabeth Cole has been informed that her tax advisors need to independently evaluate the accuracy of such information. Tax issues exist with respect to the proper treatment of certain items resulting from the payment of annuities from the CRAT, and with respect to the termination of the CRAT and distribution of its assets. Elisabeth Cole is solely responsible for identifying these tax issues and for determining how to resolve these tax issues and for correctly reporting her income tax liabilities. The other parties will not be responsible for such resolution or for applying for private letter rulings or for any other guidance from the Internal Revenue Service.

The first paragraph of Article VI of the Settlement and Release Agreement entered into effective July 1, 2005 is deleted in its entirety and replaced with the following paragraphs:

In consideration of the mutual promises set forth in this Agreement, and except as otherwise specifically provided in this Agreement, the Parties hereby completely, absolutely, unconditionally release and fully discharge each other (and their officers, directors, representatives, agents, employees, attorneys, investigators, accountants, legal staff, heirs, successors and assigns), and all other persons, firms and corporations, liable or who might be claimed to be liable from any and all past, present or future demands, claims, obligations, causes of action, rights, costs, contribution, indemnity, lawsuits and liabilities of any kind and nature whatsoever, whether formally asserted or which could have been asserted in any of the proceedings listed above or otherwise, whether arising out of contract, tort, statute, or otherwise, in law or in equity, including all claims for indemnity, compensatory, special, liquidated and punitive damages, penalties, costs, expenses, and attorneys' fees, and other types of loss or losses, whether presently known or unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disclosed or undisclosed, arising or alleged to have arisen out of, or in any way relating to, any of the proceedings listed above or otherwise.

Elisabeth Cole hereby releases the Law firm of Davis and Davis, Trigg Davis, Deborah Randall and National Bank of Alaska (the "Special Release Parties") from any claims resulting from services performed by them in the course of the administration of the Estate or the Charitable Remainder Trust including the preparation of the Estate Tax Return filed on behalf of the Estate of Madeleine Cole. However, Elisabeth Cole expressly does not release The Special Release Parties or any physicians or health care professionals engaged through Davis and Davis from any claims resulting from any events that occurred prior to the death of Madeleine Cole, such as the drafting of Madeleine Cole's will and the establishment of any bank accounts in the name of Madeleine Cole. The Special Release Parties are expressly not released from any claims resulting from the establishment of any bank accounts in the name of Elisabeth Cole, whether those accounts were established before or after the death of Madeleine Cole. Paul W. Koval is expressly not released from any claims any Party to this agreement may have against him.

DATED: __23/9/05__ , 2005          _Elisabeth Cole_ (signature)
                                    Elisabeth Cole

AMENDMENT TO SETTLEMENT & RELEASE AGREEMENT 9/23/05 10:00 AM
10042\01 – Page 8

STATE OF ALASKA            )
                           ) ss:
THIRD JUDICIAL DISTRICT    )

The foregoing instrument was acknowledged before me this *23* day of
*September*_____, 2005, by Elisabeth Cole

> State of Alaska
> **NOTARY PUBLIC**
> Deborah L. Fenton-Bushue
> Commission No: 101289

Notary Public, State of Alaska
My Comm. Exp. *August 19, 2009*

World Wildlife Fund

DATED: *9/30/05*_____, 2005      By _____
                                      David Flickinger
                                  Its *Deputy General Counsel*

                           )
DISTRICT OF COLUMBIA ) ss:
                           )

The foregoing instrument was acknowledged before me this *30th* day of
*September* 2005, by *David Flickinger* of World Wildlife Fund, a non-profit
corporation, on behalf of the Corporation.

Notary Public, District of Columbia
My Comm. Exp. Joan Parmenter
               Notary Public, District of Columbia
               My Commission Expires 4-14-2008

St Jude Children's Research
Hospital

DATED: _____, 2005      By _____

                                      Its _____

AMENDMENT TO SETTLEMENT & RELEASE AGREEMENT 9/23/05 10:00 AM
10042\01 – Page 9

STATE OF ALASKA   )
          ) ss:
THIRD JUDICIAL DISTRICT )

The foregoing instrument was acknowledged before me this $23$ day of
_____, 2005, by Elisabeth Cole.

> **State of Alaska**
> **NOTARY PUBLIC**
> **Deborah L. Fenton-Bushue**
> **Commission No: 101289**

Notary Public, State of Alaska
My Comm. Exp. _____

World Wildlife Fund

DATED: _____, 2005  By _____
              Its _____

        )
DISTRICT OF COLUMBIA ) ss:
        )

The foregoing instrument was acknowledged before me this _____ day of
_____, 2005, by _____ of World Wildlife Fund, a non-profit
corporation, on behalf of the Corporation.

_____
Notary Public, District of Columbia
My Comm. Exp. _____

St Jude Children's Research
Hospital

DATED: ___10/25/2005___, 2005  By _____
              John P. Moses
              Its __Chief Executive Officer__

AMENDMENT TO SETTLEMENT & RELEASE AGREEMENT 9/23/05 10:00 AM
10042\01 – Page 9

STATE OF TENNESSEE      )
                           ) ss:

COUNTY OF SHELBY      )

The foregoing instrument was acknowledged before me this 25TH day of _Octber_____, 2005, by _John P Moses_ of St Jude Children's Research Hospital, a non-profit corporation, on behalf of the Corporation.

Notary Public, State of Tennessee
My Comm. Exp. _6/9/2029_

Alaska Trust Company as Personal
Representative of the Estate
of Madeline Cole and as Trustee
of the Charitable Remainder Trust

DATED: _9/23/05_____, 2005     By _____
                                        Douglas Blattmachr
                                        President

STATE OF ALASKA      )
                           ) ss:

THIRD JUDICIAL DISTRICT      )

The foregoing instrument was acknowledged before me this 23rd day of _September____, 2005, by Douglas Blattmachr of Alaska Trust Company, an Alaska corporation, on behalf of the Company.

Notary Public, State of Alaska
My Comm. Exp. _w/ position____

Approved, Reviewed and Authorized:

DATED: _____9/23_____, 2005    _____
                                Darryl L. Jones, Attorney for
                                Elisabeth Cole

DATED: _____10-31_____, 2005   _____
                                Robert L. Manley, Attorney for
                                World Wildlife Fund and St. Jude
                                Children's Hospital

DATED: _____9-23-05_____, 2005  _____
                                Diane Vallentine, Attorney for
                                Alaska Trust Company

## SECOND AMENDMENT
## TO SETTLEMENT AND RELEASE AGREEMENT

### I.   PARTIES

This Amendment to Settlement and Release Agreement amends the Settlement and Release Agreement entered into effective July 1, 2005 (hereinafter "Settlement Agreement"), as amended pursuant to the Amendment to Settlement and Release Agreement entered into effective September 23, 2005 (hereinafter "First Amendment"), by and among the following parties:

A.   Elisabeth Cole, M.D. (hereinafter "Elisabeth Cole"), individually, as beneficiary of the Estate of Madeleine Cole (hereinafter "Estate"), as beneficiary of the Testamentary Charitable Remainder Annuity Trust established under the will of Madeline Cole (hereinafter "Charitable Remainder Trust"), as owner, trustees or beneficiary of the Food for Thought or Glendalough Trust, and in any other capacity relevant to the Estate, the Charitable Remainder Trust and this Agreement.

B.   The Alaska Trust Company (hereinafter "ATC"), the personal representative of the Estate and the trustee of the Charitable Remainder Trust.

C.   World Wildlife Fund (hereinafter "WWF"), a residual beneficiary of the Charitable Remainder Trust.

D.   St. Jude Children's Research Hospital (hereinafter "St. Jude"), a residual beneficiary of the Charitable Remainder Trust.

### II.   AMENDMENT

The provisions of this Second Amendment to Settlement and Release Agreement (hereinafter "Second Amendment") are intended to amend the Settlement Agreement, as amended pursuant to the First Amendment, and the three documents

SECOND AMENDMENT TO SETTLEMENT
& RELEASE AGREEMENT 5/31/2006 10:15 AM
#119362



Page 1

should be interpreted in conjunction with each other; provided, however, anything to the contrary notwithstanding, the provisions of this Second Amendment supercede the provisions of the Settlement Agreement and the First Amendment to the extent of any inconsistency. All provisions of the Settlement Agreement and the First Amendment not modified by this Second Amendment remain in full force and effect and are hereby ratified and affirmed.

## III.    PUPOSE OF AMENDMENT.

The purpose of the amendments set forth in this Second Amendment is to extend the dates for payments to Elisabeth Cole and the attorneys for WWF and St. Jude in order to address the unanticipated delay in obtaining a response from the Internal Revenue Service to the request for a Private Letter Ruling, referred to in the Settlement Agreement.

## IV.    MODIFICATION TO SETTLEMENT TERMS

Paragraph O of Article IV of the Settlement Agreement, amended pursuant to Article IV of the First Amendment (at pages 4-5), is amended as follows: the date "May 2006" is changed to "November 2006." The remainder of Paragraph O of Article IV of the Settlement Agreement remains in full force and effect without any other amendment.

Paragraph T of Article IV of the Settlement Agreement, added to the Settlement Agreement by Article IV of the First Amendment (at page 7), is amended as follows: the date "May 23, 2006" is changed to "November 23, 2006." The remainder of Paragraph T of Article IV of the Settlement Agreement remains in full force and effect without any other amendment.

DATED: June 12 , 2006

_____

Elisabeth Cole

SECOND AMENDMENT TO SETTLEMENT
& RELEASE AGREEMENT 5/31/2006 10:15 AM
#119362

Page 2

STATE OF ALASKA          )
                         ) ss:
THIRD JUDICIAL DISTRICT  )

The foregoing instrument was acknowledged before me this 12th day of _June_____, 2006, by Elisabeth Cole.

_Deborah L. Fenton-Bushue_
Notary Public in and for Alaska
My Commission Expires: _8/19/2009_

State of Alaska
NOTARY PUBLIC
Deborah L. Fenton-Bushue
Commission No: 101289

WORLD WILDLIFE FUND


DATED:_____, 2006      By:_____
                                Its:_____


                         )
DISTRICT OF COLUMBIA ) ss:
                         )

The foregoing instrument was acknowledged before me this ____ day of _____, 2006, by _____ of World Wildlife Fund, a non-profit corporation, on behalf of the Corporation.


                                _____
                                Notary Public, District of Columbia
                                My Commission Expires:_____


                                ST JUDE CHILDREN'S RESEARCH
                                HOSPITAL


DATED:_____, 2006      By:_____
                                Its:_____

STATE OF ALASKA          )
                               ) ss:

THIRD JUDICIAL DISTRICT    )

     The foregoing instrument was acknowledged before me this _____ day of _____, 2006, by Elisabeth Coie.


                                      _____
                                      Notary Public in and for Alaska
                                      My Commission Expires:_____


                                    WORLD WILDLIFE FUND


DATED: _June 22_, 2006      By: _David P. Flickinger_
                                  Its: _Deputy General Counsel_


                           )
DISTRICT OF COLUMBIA ) ss:
                           )

     The foregoing instrument was acknowledged before me this _22_ day of _June_, 2006, by _David Flickinger_ of World Wildlife Fund, a non-profit corporation, on behalf of the Corporation.


                                    _Joan Parmenter_
                                    Notary Public, District of Columbia Joan Parmenter
                                                Notary Public, District of Columbia
                                    My Commission Expires:_____ My Commission Expires 4-14-2008


                                    ST JUDE CHILDREN'S RESEARCH
                                    HOSPITAL


DATED:_____, 2006     By:_____
                                    Its:_____

STATE OF ALASKA        )
                           ) ss:
THIRD JUDICIAL DISTRICT    )

       The foregoing instrument was acknowledged before me this _____ day of
_____, 2006, by Elisabeth Cole.


                              _____
                              Notary Public in and for Alaska
                              My Commission Expires:_____


                              WORLD WILDLIFE FUND


DATED:_____, 2006     By:_____
                              Its:_____


                   )
DISTRICT OF COLUMBIA ) ss:
                   )

       The foregoing instrument was acknowledged before me this _____ day of
_____, 2006, by _____ of World Wildlife Fund, a non-profit
corporation, on behalf of the Corporation.


                              _____
                              Notary Public, District of Columbia
                              My Commission Expires:_____


                              ST JUDE CHILDREN'S RESEARCH
                              HOSPITAL

DATED:___June 14____, 2006     By:_____
                              Its: David L. McKee
                  (LEGAL Chief Operating Officer
                  REVIEW)

STATE OF TENNESSEE    )
                      ) ss:
COUNTY OF SHELBY      )

The foregoing instrument was acknowledged before me this _14th_ day of
_June_____, 2006, by _David L. McKee_____ of St Jude Children's Research
Hospital, a non-profit corporation, on behalf of the Corporation.

_Sara S. Garrett_
Notary Public, State of Tennessee
My Commission Expires:_____ MY COMMISSION EXPIRES:
                              April 28, 2009

ALASKA TRUST COMPANY AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
MADELEINE COLE AND AS TRUSTEE OF
THE CHARITABLE REMAINDER TRUST

DATED:_____, 2006    By:_____
                                    Douglas Blattmachr
                                    President

STATE OF ALASKA          )
                         ) ss:
THIRD JUDICIAL DISTRICT  )

The foregoing instrument was acknowledged before me this _____ day of
_____, 2006, by Douglas Blattmachr of Alaska Trust Company, an Alaska
Corporation, on behalf of the Company.

_____
Notary Public in and for Alaska
My Commission Expires:_____

APPROVED, REVIEWED AND AUTHORIZED:

Dated:_____, 2006       _____

SECOND AMENDMENT TO SETTLEMENT                        Page 4
& RELEASE AGREEMENT 5/31/2006 10:15 AM
#119362

STATE OF TENNESSEE    )
                      ) ss:
COUNTY OF SHELBY       )

The foregoing instrument was acknowledged before me this _____ day of
_____, 2006, by _____ of St Jude Children's Research
Hospital, a non-profit corporation, on behalf of the Corporation.

_____

Notary Public, State of Tennessee
My Commission Expires:_____

ALASKA TRUST COMPANY AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
MADELEINE COLE AND AS TRUSTEE OF
THE CHARITABLE REMAINDER TRUST

DATED: 6/29_____, 2006    By:_____
                                Douglas Blattmachr
                                President

STATE OF ALASKA           )
                          ) ss:
THIRD JUDICIAL DISTRICT   )

The foregoing instrument was acknowledged before me this 29 day of
_____, 2006, by Douglas Blattmachr of Alaska Trust Company, an Alaska
Corporation, on behalf of the Company.

*OFFICIAL SEAL*
ANITA R. TARDUGNO
NOTARY PUBLIC, STATE OF ALASKA
MY COMMISSION EXPIRES 1/1/2008

_____
Notary Public in and for Alaska
My Commission Expires: 1/1/2008

APPROVED, REVIEWED AND AUTHORIZED:

Dated:_____, 2006    _____

SECOND AMENDMENT TO SETTLEMENT
& RELEASE AGREEMENT 5/31/2006 10:15 AM
#119362

Page 4

Darryl L. Jones, Attorney for
Elisabeth Cole

Dated: JUNE 23, 2006

Robert L. Manley, Attorney for
World Wildlife Fund and St. Jude Children's
Research Hospital

Dated:_____, 2006

Diane F. Vallentine, Attorney for
Alaska Trust Company

Darryl L. Jones, Attorney for
Elisabeth Cole

Dated: _____, 2006

Robert L. Manley, Attorney for
World Wildlife Fund and St. Jude Children's
Research Hospital

Dated: _June 27_, 2006

Diane F. Vallentine, Attorney for
Alaska Trust Company